## Galilean Children's Home, Inc., et al. v. Ball.

October 22, 1948.

**320**

L. O. Siler, H. M. Sutton and C. B. Upton for appellants.

R. L. Brown and Joe S. Feather for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is a controversy between the Galilean Children's Home and Lyda Wallace Ball over the custody of Mrs. Ball's two children, Cleta Fay Wallace and Myrtle Elsie Wallace, aged 11 and 7 years respectively. Mrs. Ball, now 29 years of age, married Robert Wallace when she was 14. Their oldest child, Berry Wallace, now 14, has lived with his paternal grandparents since he was 2 years of age. Robert Wallace was killed in a railroad accident on September 29, 1943. He left no estate. His widow was in ill health, had no income, and was unable to support herself and her two younger children. Both of her parents were dead and she had no relatives willing or able to undertake the care and custody of the children. She received information concerning the Galilean Children's Home, made an investigation, and in the summer of 1944 placed the children in the Home. Before receiving the children the Home required her to sign the following agreement:

"The following statements are satisfactory to me in regard to the surrender of my 2 children to the Galilean Children's Home:

"(1) That these children shall never be adopted out;

"(2) That I or any close relative shall not visit them more than every 6 months;

"(3) That all correspondence shall be carried on with the home and not with the children;

"(4) That in the event of serious sickness or death, I shall be notified;

"(5) That under the agreement of legal guardianship, I shall not attempt to remove these children from the Galilean Children's Home;

"(6) That after 2 months from this date, ————, I will sign the legal guardianship papers to this, assur-

ing myself that in the event of my death no one can remove these children from the Galilean Children's Home, and furthermore that the Galilean Children's Home can be legally protected to continue the grace of Christ in the life of each individual child.

"Mother's signature:
"Lyda Katherine Wallace

"Witness: (Grandmother)
"Myrtle Wallace

"By this writing, I now request the Whitley County Court to adjudge the Galilean Children's Home as legal guardian over said children, and that the Galilean Children's Home have the care, custody and control over said children, and that such not be changed or altered in the event of my death.

"/s/ Lyda Katherine Wallace
"Grandmother: /s/ Myrtle Wallace."

In January, 1945, Mrs. Wallace married John Ball, and they now reside in Cincinnati, Ohio, where he is employed. No children have been born to this union, and physicians have informed Mr. and Mrs. Ball that they will never have a child of their own. Late in 1947 Mrs. Ball requested the Galilean Children's Home to surrender custody of the children but it refused, and on March 6, 1948, she brought this action in the Whitley Circuit Court seeking their custody. Considerable proof was heard orally by the chancellor, who found that it was for the best interest of the children that their custody be given to their mother. It was so adjudged, and the Galilean Children's Home has appealed.

Like the chancellor, who said at the conclusion of a well considered opinion, "It is not easy to make a decision here," we find that solution of the problem presented is difficult. On one side is the mother, now in good health and financially able to provide a comfortable home for her children. On the other side is an institution which is doing excellent work in caring for and training orphaned children. In fact, by the unique service rendered by it in this respect, it has gained national recognition although it has been in operation only a few years. The Galilean Children's Home was founded in 1939 by Rev. John Vogel, who started his nondenomina-

tional ministery in Whitley County, Kentucky, and soon saw the need for an institution to care for the neglected, abandoned and orphaned children in that section of the state. From a small beginning the institution has grown until now it cares for about sixty children, and many are on the waiting list. The children are devoted to Reverend and Mrs. Vogel, whom they address as ''daddy'' and ''mommy,'' and to their assistants. The Home is situated on a 400-acre farm in the mountainous section of Whitley County about 12 miles from Corbin, and there are now nine buildings, including cottages, dining hall, school and church. It is financed by unsolicited gifts, and those in charge receive little, if any, compensation other than their board and lodging. Apparently theirs is a labor of love. That the children are well cared for and are happy and contented is vouched for by numerous representative citizens of the surrounding country. The proof shows and appellee concedes that the two children whose custody is in controversy have been well cared for since they entered the Home. The proof likewise shows that Mr. and Mrs. Ball are now able to provide a suitable home for them. The Balls are persons of good morals, are regular church attendants, and Mr. Ball has a substantial income. He testified that he is anxious, able and willing to provide a home for and educate the two children as his own. He is a trustee of the church which he attends, and is assistant superintendent of its Sunday School. Mrs. Ball is secretary of the Sunday School. There is no contention that she is unfit to have the custody of her children.

Ordinarily the natural right of the parent will prevail in a contest between the parent and a stranger who has had the custody of the children for a long time, where both parties are equally fit to care for the child. Altemeier v. Rachford, 291 Ky. 845, 165 S. W. 2d 848; Johnson v. Cook, 274 Ky. 841, 120 S. W. 2d 675; Matlock v. Elam, 262 Ky. 631, 90 S. W. 2d 1015. This is particularly true where the other party is an institution. Evans v. Evans, 232 Ky. 155, 22 S. W. 2d 578. Appellant argues, however, that appellee surrendered her right to custody when she signed the agreement, and that she is bound by it. We have held that a contract by which a parent has placed his child in the custody of some other person with the understanding that the parent will not

thereafter reclaim the child is valid, but only to the extent that the parent is deprived of his superior statutory right to custody. The court will always look to the welfare of the child regardless of any contract. Staggs v. Sparks, 286 Ky. 398, 150 S. W. 2d 690. In Restatement of the Law of Contracts, volume 2, section 583, under Comment a, it is said:

"Like marriage, the custody of young children is of importance to the State. It is not a property right of the parents. The court may, if it is for the welfare of the child, enforce the bargain, but will not do so otherwise."

In Vetter v. Goff, 306 Ky. 505, 208 S. W. 2d 514, 515, the father of a two-year-old child sought to reclaim custody from the child's maternal grandmother. The chancellor had found that the father had agreed to surrender the child's custody to the grandmother. In the course of the opinion this court said:

"Such an agreement is valid in this state, Thompson v. Childers, 231 Ky. 179, 21 S. W. 2d 247, but, at most, only deprives the parent of his superior statutory right to custody and leaves for determination by a court of equity what is for the best interests of the child."

The chancellor's decision in this case is entitled to some weight. He saw and heard the witnesses, and that he gave the case thorough consideration is evidenced by an exhaustive opinion which has been made a part of the record. We approve as sound the concluding paragraph of that opinion, which reads:

"The court, therefore, is asked to decide between a Christian institution and what this record conclusively shows is a Christian home. That decision must be, and is, in favor of the home and the natural parent."

The judgment is affirmed.