## MIDDLETON v. MIDDLETON et al.

Court of Appeals of Kentucky.

Oct. 16, 1953.

J. K. Beasley, Harlan, for appellant.

Cawood Smith, Harlan, for appellees.

SIMS, Chief Justice.

On this appeal we must decide whether the father or the maternal grandmother shall have the custody of Sue Middleton, a girl 8 years of age. The chancellor in a well-written opinion left the child with the grandmother, who has cared for Sue since the latter was less than 2 years of age, and the father appeals. This is a fact case and it is necessary to review the evidence. In doing so, we will not go into detail but will content ourselves in giving only the substance of the evidence and be as brief as we reasonably can. As several of the parties and witnesses have the same surnames, to avoid confusion we will refer to them by their given names.

June and Denver Middleton were divorced in 1946. They had two children, a boy whose custody was given to his father and a daughter, Sue, then less than 2 years of age, whose custody was given to the mother; and the father was ordered to pay the mother $20 per month for the support of Sue. June went to Louisville to work and was not in a position to care for her daughter and left Sue with June's mother, Mrs. Nora Parker, who lives in a 4-room house in the mining camp of Black Bottom, in Harlan County. Likewise, Denver seems not to have been in a position to care for the little boy and left the child with his paternal grandfather, Howard Middleton. Denver remarried in 1950, is a miner and has a fairly good home in the country accessible to school and church, and resides within a few hundred yards of his father's home. Denver's wife wants Sue in her home and is willing to care for the child.

June has remarried and she and her husband live in a small apartment in Louisville, where her husband is earning $325 per month as a die and tool maker. Both of them are willing to take and care for Sue but they do not want to deprive the grandmother of the child. Mrs. Parker,

the grandmother, has had three daughters "to turn out bad," and June admits Black Bottom is not a good place in which to rear a child, yet she believes her mother can protect Sue from evil influences.

There is no evidence in the record against the character of Mrs. Parker or of her home. She appears to be a good Christian woman with a wholesome but crowded and humble home. The only testimony that her home is not a fit one in which to rear Sue is that three of her daughters "turned out bad." However, the two older girls have married and left the parental roof while the third, a girl of 16, is there with her illegitimate baby. Mrs. Parker testified that some boy in school "led my girl astray," and the two older girls "got in with the wrong people;" that there has never been any misconduct in her home by her daughters, or anyone. This grandmother is married to a hardworking and respectable man.

Denver paid no attention to that part of the divorce judgment ordering him to pay $20 per month to June for the support of Sue, and he went to Mrs. Parker and agreed to give her $10 per month for the child's support. Even in prosperous times Denver got behind ten months in these small payments and did not meet them until Mrs. Parker instituted criminal proceedings against him. The testimony shows that when Denver came to Mrs. Parker's home to make the monthly payments he never talked or played with Sue and never became acquainted with her, nor she with him.

■ The rule in this character of case is not only elementary but quite simple: the welfare of the child is the controlling consideration in determining its custody, Hager v. Hager, 309 Ky. 803, 219 S.W.2d 10; and a child is usually placed in the custody of its natural parents rather than a relative in absence of a showing the parent is unfit for custody. KRS 405.020; Whalen v. Boles, 314 Ky. 817, 236 S.W.2d 885. But the application of this rule to the facts in child custody cases gives courts grave concern. Solomon with his great wisdom easily determined which of two women was the mother of a child both claimed, but even this wisest of men might have found himself in difficulty had he been called upon to decide whether it was for the best interest of the child to be placed with its father or with its maternal grandmother who had nurtured, cared for it and raised the child from a babe-in-arms.

■ Counsel on each side cite us to numerous of our decisions some of which place the custody of young children with their natural parents and others of which place that custody in grandparents or other near relatives. It is patent that in cases of this character each must be controlled by its own peculiar facts and circumstances. Here, Sue is devoted to her grandmother and her grandmother in turn dearly loves Sue. The father hardly knows the child and during the 8 years Mrs. Parker has had Sue with her, the father has had to be forced to contribute to the child's support and he has shown no affection for Sue and but little interest in Sue's welfare. As we said in Cummins v. Bird, 230 Ky. 296, 19 S.W.2d 959, 962, a court feels it is a serious and solemn thing to deny a father the custody of his child, but where he has shown no affection for his daughter for 8 years and has had to be made by the court to support her, and during all that time his daughter has been cared for by her maternal grandmother and great affection has grown up between the two, we will not disturb the relationship and force the child into the home of her father and a stepmother.

■ In this instance we do not believe Sue's welfare would be benefited by the change. However, the custody of Sue is not forever denied the father and should he become acquainted with Sue and show affection for her and should it later appear to the chancellor that it is for the best interest of Sue to put the child in the custody of her father, we feel sure the chancellor will do that.

In passing we might remark that the court's order does not show the child may

visit her father. We are quite sure this was an oversight on the part of the chancellor and that he intended to let his judgment show Sue can visit her father at reasonable times and places. If any issue arises upon the question of visitation, the chancellor will amend his order so that it will show the child may visit in her father's home at reasonable times.

The judgment is affirmed.