**Wilson PICKETT, Appellant,**

**v.**

**Charlotte FARROW, Appellee.**

Court of Appeals of Kentucky.

Nov. 23, 1960.

James S. Greene, Jr., Harlan, for appellant.

Clarence A. Corneilus, Harlan, for appellee.

STANLEY, Commissioner.

The judgment denied the appellant, Wilson Pickett, custody of his three children in a habeas corpus proceeding. The appellee, Charlotte Farrow, is their maternal grandmother. The children are girls, aged 13, 10 and 9 years. The parties are colored people.

The appellant and his wife moved from Harlan County, Kentucky, to Boston Massachusetts, about fourteen years ago. The mother had been sick for three years and in a hospital for eleven months before her death on December 24, 1959. The father was seriously ill earlier in that month. The grandmother had gone to Boston and was with the family for about six weeks. She brought the children to Harlan, and the appellant came with his wife's body by train. Though there are some relatively insignificant differences in the testimony, it is certain that it was agreed that the children should stay with their grandmother until their father could get settled and then he would return for them. He had agreed to provide for the children while they were with their grandmother but appears to have sent them little or nothing. For ten years Pickett was employed by the Bethlehem Steel Company. He was on strike from January 22 to June 23, 1960, and could obtain no other work. Meanwhile, the children were being well cared for by their grandmother in Verda, Harlan County. She had been drawing "Social Security" for herself of $57.80 and for the children of $128.10 a month. She earns $5 a week in part-time housework. Her employer testified in the highest terms as to her fine qualities and character and her care of these children. Her neighbors did also. She owns a five-room home in Verda, which has become little more than an abandoned mine camp. There is no doubt that the grandmother is a good woman and has done well by these children.

The grandmother testified that while she was in Boston during her daughter's illness, there was no heat in the house and but little food, and that Pickett would be away three or four days at a time and sometimes come home drunk. On one occasion a Boston welfare agency had supplied them with food. The thirteen year old child testified that her father had not been working and "didn't treat us very good." She preferred to stay with her grandmother. The ten year old child stated the same thing, but on cross-examination said she "liked Boston" and didn't know whether or not she would like to stay with her father.

The other side of the case is that the father and his family had lived on the first floor of a large two-family residence in a nice residential district in Boston. The apartment has four rooms, a hall, bath and modern facilities. The property is owned by the appellant's father and brother, who live on the second floor. There is evidence that they including his mother, had done and are willing to do whatever is necessary in caring for these children. The father's apartment is near a good integrated school; while in Verda there is a one-room school of comparatively low standard. When the children reach high school age, the available educational opportunities are in greater contrast. The evidence does not lead to the conclusion that the father drinks to excess. On the contrary, he is regularly employed at $2.73 an hour and is in a position to take care of his children. The grandmother is 72 years old, and in the natural course of events it will not be long before she is unable to care for the children. The present social security allowance of $128.10 a month cannot be expected to continue indefinitely. The father is 34 years old and his parents around sixty.

This case does not fall into the unusual class where a grandparent had kept a child for a long time and his parents had so neglected him as to forfeit their right to the custody of their child. These children were with their grandmother under a temporary arrangement made necessary or desirable because of the circumstances in which the father was placed. As soon as he was able to care for them, he sought their custody. We well understand the devotion of the grandmother and appreciate her desire to keep the children. That they are presently being well taken care of and apparently are happy in their surroundings cannot be regarded as a factor controlling or overcoming the natural and legal right of a parent to the "custody, nurture and education of [his] minor children." Here he is

not shown to be unsuited to the trust. KRS 405.020.

Consideration of the father's superior natural and statutory right and of our primary concern for the present and future welfare of the children leads to the conclusion that the man is entitled to his children and that they will be better off in his custody. Johnson v. Cook, 274 Ky. 841, 120 S.W.2d 675; Setser v. Caldwell, 300 Ky. 356, 188 S.W.2d 451; Merriman v. Selvey, Ky., 296 S.W.2d 716; Kantorowicz v. Reams, Ky., 332 S.W.2d 269.

The judgment is reversed with directions to enter another consistent with this opinion.