**Jorge E. REYNARDUS, Appellant,**

**v.**

**Telesforo GARCIA and Flora Garcia, Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1968.

Rehearing Denied March 21, 1969.

Carroll M. Redford, Jr., Redford & Redford, Glasgow, for appellant.

Shelley T. Riherd, Riherd & Richardson, Glasgow, for appellees.

STEINFELD, Judge.

Jorge E. Reynardus, appellant, and Clara Flora Barbara F. Garcia Reynardus were husband and wife. Born as a result of this marraige were Clara Angelica Reynardus, age three, and Jorge Edjaro Reynardus, age two. Marital difficulties arose while the family resided in New York City. Jorge and Clara entered into a separation agreement, which provided that "the wife shall have sole custody of the children" and that the husband shall have visitation rights. Later Clara brought the two children to Barren County, Kentucky, where they lived in the home of Clara's parents, appellees, Telesforo Garcia and Flora Garcia. Jorge came to Kentucky to visit with his wife in the hospital where she was dying from a self-inflicted wound and then he attended her funeral. The children remained with the grandparents, but shortly after his return to New York Jorge demanded that the children be sent to him. Appellee, Flora Garcia, took the children to New York to visit with Jorge and his parents and then suddenly, without the knowledge, permission or consent of Jorge, she took the children back to Kentucky. After unsuccessful attempts to get the appellees to surrender the children to him, Jorge petitioned for writ of habeas corpus in the Barren Circuit Court. Appellees answered, claiming that they were entitled to custody and the case was tried as a proceeding to determine that issue. After hearing many witnesses the trial court made findings of fact and conclusions of law pursuant to CR 52. In part it said:

"The petitioner's claim to custody of his children is based on KRS 405.020(1), which provides: 'The father and mother shall have the joint custody, nurture and education of their minor children. If either of the parents dies, the survivor, if suited to the trust, shall have the custody, nurture and education of the minor children * * *.'

The Court of Appeals has construed this statute in many cases under many different set of facts and circumstances. The Court, in the many cases decided, has consistently held that the statute does not

confer upon the surviving parent an absolute right to custody, but the right is conditioned upon what is best for the welfare of the children.

Cummins v. Bird, 230 Ky. 296, 19 S.W.2d 959,

Wells v. Wells, Ky., 412 S.W.2d 568 (numerous other cases)

In Cummins v. Bird, supra, the Court said: 'The term, "suited to the trust", as used in the statute, is an elastic one, and it must be understood and applied in the light of the facts and circumstances of each particular case. It involves a consideration of every element entering into the problem, and a contemplation of all the factors that may affect the welfare and happiness of the infant whose interests are involved * * * The judicial inquiry is not confined or limited to the moral character and financial ability of the particular parent that may be asserting a right to the custody of the child. It comprehends a proper consideration of those essential elements of the problem, but, in addition thereof, it requires due weight to be given to all other facts and factors that have a bearing on the complex and responsible duty of rearing, training, and fostering a child according to its potential capacity and consistently with its individual character and needs.' Applying the aforesaid fundamental principles to the facts, factors and circumstances of this case, and keeping in mind that the fundamental and controlling question is what is best for the children, the Court is of the opinion that to award the exclusive custody to either of the parties would not be in the best interest and welfare of these children. It is the opinion of the Court that custody should be awarded to respondent grandparents, but modified to the extent that the children would have the opportunity to spend part of the time with their father and paternal grandparents."

Judgment was entered awarding custody to appellees with the right of the father to have the children visit him in New York for two months during each summer. It also authorized the father "to visit the children in Glasgow, Kentucky, at any and all reasonable times * * *."

For reversal appellant relies on KRS 405.020(1) and cites various cases, some of which we will discuss. He claims that the appellees failed to sustain the burden of proof that he was unsuited "to the trust" of raising his own children and he makes other contentions to support his position.

Appellees contend that Lewis v. Lewis, Ky., 343 S.W.2d 146 (1961), sustains the action of the lower court. We do not consider that case authority in the proceeding before us. KRS 405.020 was not relied upon and the facts are completely different, particularly in that the child had been with the grandparents from the time he was three months old and when the father began his efforts to gain the custody of his child he had reached twelve years of age. The child expressed a strong desire to remain with his grandparents. There are a number of other cases dealing with abandonment which is not a factor in the present proceedings.

Appellees also rely on McCormick v. Lewis, Ky., 328 S.W.2d 415 (1959), but there too the effect of KRS 405.020(1) was not an issue.

Appellees argue that Bonilla v. Bonilla, Ky., 335 S.W.2d 572 (1960), supports them, but there both parents were living. In litigation between them it had been determined that the best interest of the child required that it be in the custody of its maternal grandparents. The father sought "to regain custody of the child" upon a claim of changed conditions. We said that he had "the burden of proving that the change will promote the welfare of the child." In the matter now before us no court had determined that the Reynardus children should be in the custody of their maternal grandparents.

For more than fifty years the statutory law in Kentucky has provided that " * * in the event of the death of either one of the parents, father or mother, the survivor, if suited to the trust, shall have the custody, nurture and education of such infant child or children * * *." KS 2016; KRS 405.020(1).[1]

A comprehensive discussion of this subject is found in Rallihan v. Motschmann, 179 Ky. 180, 200 S.W. 358 (1918), wherein we said:

"Hence, it appears that in the event of the death of a mother, the husband surviving, as in the instant case, he has a superior right, both under the common law and by the statute, if he is suited to the trust, to have the custody, nurture and education of his child. This right seems to appertain to him, both in accordance with the common law of this jurisdiction and by the terms of the statute, above quoted. As between the appellee and the mother of the child, his right to the custody was not superior to the right of the mother, and in that state of case, as between him and the mother, in the event of a separation, the court, in confiding its custody, would be guided alone by the best interests of the child, in accordance with the doctrine announced by this court before the enactment of the statute, supra; but, when the mother died, the father's right, to the custody, became superior to any other person, if he was suited for the trust. In determining his suitability the court will take into consideration his moral fitness and habits, surroundings, age, financial ability, interest and affection for the child, and any circumstances, which would be prejudicial to the best interests of the child, including the breaking up of her present relations, but the burden of showing the father's want of suitability is cast upon the one, who

would deny him the custody of his child upon that ground."

The court has never deviated from the rules announced in Rallihan. Many factors will enter into a determination of whether the father is "suited to the trust". Suitability and fitness and the superior right of the parent were discussed in Crase v. Shepherd, Ky., 240 S.W.2d 548 (1951), and cases announcing the rules were reviewed, including Cummins v. Bird, 230 Ky. 296, 19 S.W.2d 959 (1929).

In Cupp v. Cupp, Ky., 302 S.W.2d 371 (1957), we held that in relying upon KRS 405.020(1) the father was "asserting a legal right" in a contest between that father and the maternal grandparents, the mother of the children having died after a divorce from the father.

Berry v. Berry, Ky., 386 S.W.2d 951, 39 A.L.R.2d 258 (1965), involved litigation between the father of a seven-year-old female child and a person unrelated, who had been requested by the mother to take care of the child. The parents had been divorced and the mother who had been awarded custody of the child died after the marriage had been dissolved. We held:

"By KRS 405.020(1) the surviving parent, if suited to the trust, shall have the custody, nurture, and education of a minor child. The rule is that in a contest between a foster parent and a natural parent who has not surrendered custody, the natural parent has the superior right of custody which must prevail unless the natural parent is not suitable, fit, or capable of making reasonably adequate provisions for the child's well-being. Rallihan v. Motschmann, 179 Ky. 180, 200 S.W. 358; Crase v. Shepherd, Ky., 240 S.W.2d 548; Middleton v. Middleton, Ky., 261 S.W.2d 640. The burden of showing unfitness is on the person seeking to deprive the natural parent of custody. Rallihan v. Motschmann, 179 Ky.

1. For a discussion of child custody see Ten Years of Kentucky Domestic Relations Law, 1955–1965 by Frederick W. Whiteside, Jr., 54 K.L.J. 206, 232–237.

180, 200 S.W. 358; Whalen v. Boles, 314 Ky. 817, 236 S.W.2d 885; Bonilla v. Bonilla, Ky., 335 S.W.2d 572. If both parties are shown to be equally fit, the natural parent shall prevail. Galilean Children's Home v. Ball, 308 Ky. 319, 214 S.W.2d 403."

 The law presumes that the parent is competent and suitable to rear the child. In Re: Peterson, 119 Neb. 511, 229 N.W. 885 (1930). Bell v. Krauss, 169 Cal. 387, 146 P. 874 (1915), held that "prima facie the parent is presumed competent * *" and that the parent is entitled to custody "unless found by the court to be incompetent." There is a presumption throughout the whole case that the parent is fit to have the custody unless this presumption is overcome by sufficient proof. Wilson v. Mitchell, 48 Colo. 454, 111 P. 21, 30 L.R.A., N.S., 507 (1910).

In Goff v. Goff, Ky., 323 S.W.2d 209 (1959), where the mother was found to be unfit to raise the child we said: "There is no evidence to show that Kermit is not a suitable person to have custody of the children, and since as a parent he has a prima facie statutory right to custody, under KRS 405.020, he does not have the burden of proving his suitability. See Rallihan v. Motschmann, 179 Ky. 180, 200 S.W. 358."

Pickett v. Farrow, Ky., 340 S.W.2d 462 (1960), was a habeas corpus proceeding by the father against the maternal grandmother whereby the father sought to gain possession of his children. The facts were quite similar to those now before us. In ordering that the children be turned over to the father we said: "Here he is not shown to be unsuited to the trust. KRS 405.020."

We held in Hatfield v. Derossett, Ky., 325 S.W.2d 84 (1959), that a judgment awarding the custody of children to the father should be reconsidered because the record was devoid of the necessary facts for the determination of the issue. The chancellor had made "no specific findings of fact, but merely concluded that it would be to the best interest of the children to be placed in the custody of their father."

 The chancellor, in the case now before us, made findings of fact pursuant to CR 52 but there was no determination that the father was "unfit for the trust" nor under the evidence could there have been. We have demonstrated that the law of this state requires that the father be given the custody absent such a finding.

In view of the reversal for the reasons herein expressed it is unnecessary that we consider the other contentions made by the litigants.

The judgment is reversed for entry of a judgment consistent herewith.

All concur.