Jimmie JAMES, Appellant,

v.

David JAMES and Wanda James, Appellees.

Court of Appeals of Kentucky.

June 26, 1970.

Sam M. Ryan, Louisville, for appellant.

Michael V. Hargadon, Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for appellees.

EDWARD P. HILL, Jr., Chief Justice.

This is a proceeding which seeks to determine the question: Which of the liti-

gants is entitled to the custody of Randall Floyd James, age 7? Jimmie James, the petitioner in the trial court and appellant herein, seeks to obtain the custody of his son, Randall, from the respondents, David and Wanda James, herein referred to as appellees. Jimmie and David are brothers.

Randall James is the natural child of the appellant by a previous marriage that ended in divorce in the fall of 1964. The appellant and his former wife separated in the fall of 1963, when she left the appellant to care for their two children. The appellant then called upon his brother and sister-in-law for assistance. The appellant and his two children moved in with his brother. However, the arrangement lasted only two months since the appellant ran out of money and he could not pay his share of the expenses. The appellant then moved to the home of his parents. There, the grandparents of the children helped care for them until August 1964, when the appellant and the children's mother entered into an agreement whereby she would take the little girl to live with her, while the appellant would take Randall. Shortly thereafter, the divorce between the appellant and his wife became final.

Sometime afterwards, the appellees took Randall into their home to live with them since there was illness in the grandparents' home. There appears to be a conflict in the evidence as to whether the appellees assumed the care of Randall themselves or whether the appellant requested the appellees to take Randall into their home.

About the first of 1966, the appellant advised his brother he was planning to remarry in the near future. This news upset the appellees, so they secured the services of a lawyer to draw up a contract in which the appellant was to sign away all rights he had to Randall. The appellant refused to sign, stating he wanted his son back when he remarried.

In April 1966, the appellant was married to his present wife. The appellant continued his efforts to obtain his son. Rela-

tions between the two brothers disintegrated to the point that the appellees prevented the appellant from visiting his son on numerous occasions. Finally, when the appellant felt all his efforts had failed, he instituted this proceeding in December 1966.

It is unfortunate that this action was pending in the trial court for a period extending slightly over two years. Proof was taken before the trial court within one month after the filing of this action. Yet the trial court did not enter a final judgment until February 24, 1969.

The first argument presented by the appellant is that the finding of the chancellor that a contract existed between the parties relating to the custody of Randall is not supported by the evidence. Appellant submits that while there was some type of oral agreement between the parties made shortly after the appellant and his wife separated, the agreement was a temporary one and in no way intended by the parties to be of a permanent nature. Appellant further disagrees with the trial court's finding that the appellant had *"specifically asked"* the appellees to assume full care of Randall. Appellant acknowledges that the appellees took Randall from the grandparents' home with his knowledge, and he made no objection since he felt the appellees were able to provide better care for Randall at that time.

■ Appellant points to the unsigned document presented in evidence by the appellees as further evidence that there was never a contract between the parties. The document in question was drawn up by an attorney for the appellees, and it purports to show the appellant agreeing to give up all his rights to the custody of his son Randall. Appellant refused to sign the contract stating he intended to obtain the custody of his son when he remarried and was able to provide a suitable home for Randall. We have reviewed the record and are unable to find any evidence showing that a contract exists between the parties that relates in any way to the permanent custody of Ran-

dall. The trial court was in error in making a finding that there was a contract or that appellant ever "specifically asked" the appellees to assume full care of Randall on a permanent basis.

The second argument raised by the appellant relates to the finding of the trial court that the appellant failed to sustain the burden of proof by showing he was a fit person to have custody of his child. Appellant argues that under the authority of KRS 405.020 the burden of showing unfitness is on the person seeking to deprive the natural parent of custody. Reynardus v. Garcia, Ky., 437 S.W.2d 740 (Ky., 1969); and Rallihan v. Motschmann, 179 Ky. 180, 200 S.W. 358 (1918).

 We agree with appellant's contention that the trial court committed reversible error by placing the burden of proof on the appellant. One of the propositions that the Reynardus case, supra, stands for is: "The law presumes that the parent is competent and suitable to rear the child," and "the parent is entitled to custody 'unless found by the court to be incompetent.'"

Normally a natural parent being entitled to the custody of his child in a contest with a person, not a parent, the burden is upon the latter to prove that the natural parent is not entitled to custody. We think of two exceptions to this rule, (1) where a judgment of a court of competent jurisdiction has found the natural parent unfit or unsuitable to have custody, and (2) in instances where the natural parent has contracted to give up his right of parental custody.

If the trial court finds that the natural parent and the other party are equally fit, "the natural parent shall prevail." Galilean Children's Home v. Ball, 308 Ky. 319, 214 S.W.2d 403.

The rule in custody cases as between the natural parents of the child is that the welfare of the child is the paramount consideration in awarding custody.

Where the question of custody is between a natural parent on the one side and a person not a natural parent on the other side, our rule is indefinite and confusing. Cases may be found applying the "welfare of the child" rule. We think it will be helpful to the bench and bar to redefine our rule as it should apply as between a natural parent and one not a natural parent.

Accordingly, we hold that the natural parent is entitled to the custody of his child unless it is shown that the natural parent (1) is unsuitable to have custody, or (2) is harmful to the child, or (3) has contracted to give his child away, or (4) is clearly estopped to claim custody.

The judgment is reversed and the case is remanded with directions to the trial court to rehear the matter of Randall's custody in the light of present conditions and enter a new judgment in conformity with this opinion.

All concur.

OSBORNE, Judge (concurring).

I concur in the results of the majority opinion in this case. However, I believe it to be contrary to Mandelstam v. Mandelstam, Ky., 458 S.W.2d 786 which was this day handed down. I do not see how these two cases can live in the books side by side.