**Robert Lee MAYFIELD et al., Appellants,**

**v.**

**Anna Mae HAGGARD, David L. Van Zant, Appellees.**

Court of Appeals of Kentucky.

Dec. 15, 1972.

Rehearing Denied March 16, 1973.

J. T. Hatcher, Hatcher, Lewis & Bland, Elizabethtown, for appellants.

David L. Van Zant, Huddleston, Van Zant & Coyle, Elizabethtown, for appellees.

EDWARD P. HILL, Justice.

The judgment from which this appeal is prosecuted awarded the custody of two children to their grandmother, the appellee Anna Mae Haggard, and allowed an attorney fee to her attorney, David L. Van Zant. We reverse.

The appellee Robert Lee Mayfield is the natural father of the younger child and the adoptive parent of the older one. The mother of both children was Carol Haggard, now deceased. The appellee is the mother of Carol.

The older child, William Anthony (Skippy), whose custody is in controversy, was born May 28, 1959, to Carol's marriage to a man by the name of Klinglesmith. Carol and Klinglesmith were divorced, and thereafter Carol married appellant Robert Lee Mayfield. Mayfield adopted Skippy. On January 13, 1965, the other child here involved, Laura Lee, was born to the marriage of Carol and Robert Lee. Carol died of Hodgkin's disease in 1966.

During all this time, Robert Lee was in the U. S. Army and still is.

On her deathbed, Carol told her mother, Mrs. Haggard, to raise the two children. Robert Lee was present and said nothing. He argued on the trial of this case that he did not want to upset his dying wife by making an issue as to her expressed wishes. Yet, he says never at any time did he consent or agree to give appellee the absolute custody of the children.

After Carol's death, the two children moved into the appellee's home, and Robert Lee moved a mobile home onto appellee's land. They all continued to live in this manner until 1968 when Robert Lee was ordered by the army to go to war in Vietnam, where he stayed for fourteen months.

In late 1969, Robert Lee married the appellant Frances.

In June 1971, Robert Lee and Frances appeared in the Hardin Circuit Court and formally and legally adopted the two children. Of course it was actually a readoption as to Robert Lee, as he had previously adopted Skippy and Laura Lee was his natural child.

As an aftermath of this adoption proceeding, two suits were filed, consolidated, and tried resulting in the judgment appealed from. The first suit was a habeas corpus proceeding instituted by the appellant. The second suit was an equitable action

filed by the appellee asking that she be adjudged the legal custody of the two children.

This case points up the havoc that death, divorce, or war can visit upon innocent children. In this case, we have all three—death, divorce, and war. Add to these factors legal delays, and we sometimes have cases that call for decisions difficult even for a "Solomon." In the instant case, however, our decision is not at all difficult as a matter of law. The difficulty is upon the two children. That difficulty will depend upon the cooperation of the parties litigant with the court's final judgment.

In child custody cases between a natural or adoptive parent and a stranger, our law, both statutory and case law, is pretty well declared and defined in KRS 405.020(1) and by such cases as James v. James, Ky., 457 S.W.2d 261 (1970); Reynardus v. Garcia, Ky., 437 S.W.2d 740 (1968); and Berry v. Berry, Ky., 386 S.W.2d 951 (1965). In James, supra, it was written at page 263 of 457 S.W.2d:

"Normally a natural parent being entitled to the custody of his child in a contest with a person, not a parent, the burden is upon the latter to prove that the natural parent is not entitled to custody. We think of two exceptions to this rule, (1) where a judgment of a court of competent jurisdiction has found the natural parent unfit or unsuitable to have custody, and (2) in instances where the natural parent has contracted to give up his right of parental custody."

Without regard to the James rule, our review of the evidence has convinced us that this is a situation where the natural and adoptive parent possesses moral fitness and general suitability superior to that of the non-parent who seeks custody. Thus we conclude that it is manifestly in the best interest and welfare of the children that they be in the custody of their surviving natural and adoptive parent. Manion v. Cofer, Ky., 459 S.W.2d 76 (1970).

On the question of whether appellant Robert Lee contracted the children away or is estopped to now claim custody, the evidence of Anna Mae is that her dying daughter told her she wanted her mother to raise the children, which was natural. Appellant's admission that he stood by the deathbed of his wife and listened to her last request without protest can hardly be interpreted as a consent to that request. That was no time for controversy. Appellant denied he ever contracted to give up custody to Anna Mae. She does not relate any instance of a contract other than the dying request of Carol. A contract for surrender of parental rights must be established by clear and convincing evidence. Crase v. Shepherd, Ky., 240 S.W. 2d 548 (1951).

Reverting to the question of Robert Lee's fitness, the only evidence suggesting unfitness was evidence of some occasional social drinking, but nothing excessive. On the other hand, there was some evidence relative to Anna Mae's unfitness—such as living with a man to whom she was not married and having a child about two years after her husband was killed in Germany and raising that child to womanhood only to find that she too had a child out of wedlock.

The evidence discloses that appellant Frances is thirty years of age. Anna Mae is fifty-one. Frances is a high school graduate with one year of business college. Anna Mae never got past the grades. Appellant's income is $725 per month; while appellee's income is $104.80, out of which she must pay $94.39 on a mortgage. Frances held responsible jobs before her marriage. She is a Sunday school teacher.

We are satisfied from the evidence that appellants are better qualified from the standpoint of age, financial condition, and moral fitness to have the custody of the two children than is the appellee. The only cause for any reservation in this regard is the evidence of the two children, in which they express the preference that

their custody be awarded to the appellee. It should be kept in mind, however, that they were under the appellee's influence for some time prior to giving their testimony and that appellee gave them last-minute advice before they went into the private chambers of the chancellor. Knowing this situation, counsel for appellants wisely chose not to cross-examine them. The fact is that the children got along fine with appellants until shortly after appellants instituted legal proceedings seeking custody when, according to Robert Lee, the appellee called him by telephone and threatened to shoot him.

It is recognized that a boy past his thirteenth birthday is nearing the age when he should have a lot to say about his custody. That is not to say that he should not still have, for some years, the advice, companionship and supervision of a father. Of course, Laura Lee is only seven years of age, and her preference should not carry as much weight as the boy's. Then there is the added, well-recognized rule of reason that if otherwise feasible, children should be raised together.

It is concluded that appellants are entitled to the custody of the two children. The chancellor will set aside the judgment and enter another consistent with these conclusions. Recognizing the blood relationship of appellee to the children and the fact that she has spent long hours in tender care and devotion to them, it is fitting and proper that the court should respect her feelings to the fullest extent that is possible. This may be done by requiring appellants to return the two children for weekend visits with appellee until the trauma of transition has passed. Any disobedience by either party to the chancellor's orders, or any effort by either party to embitter the minds of the children, or either of them against the other party, should be dealt with firmly and expeditiously.

Our conclusion on the question of custody makes it unnecessary to discuss other parts of the judgment as the judgment must be and is reversed *in toto*.

We are unimpressed with appellee's argument that she is entitled to an allowance for her attorney. We are not aware of any statute or rule of law requiring a natural parent to pay the attorney fee for one resisting the legal efforts of such parent to obtain custody of his own child.

The judgment is reversed for proceedings consistent with this opinion.

STEINFELD, C. J., and MILLIKEN, OSBORNE, PALMORE and REED, JJ., concur.

NEIKIRK, J., dissents.

NEIKIRK, Justice (dissenting).

We should not substitute our judgment for that of the trial court in child custody cases unless the judgment is clearly erroneous. In a factual situation such as presented in this case, it appears to me that in all fairness and justice the children should be left in the custody of the appellee. After all, the welfare of the children should be the lodestar to guide a trial court and this court in the determination of the custody of children. In my opinion on an appeal of a child custody case, the consideration of the best interest and welfare of the child or children should be the predominant factor. Great weight should be given to the judgment of the trial court, and such judgments should be upset only on strong proof that the judgment was clearly erroneous. I fail to find the judgment in this case clearly erroneous. I would affirm.