**James E. BOND, Appellant,**

v.

**Harold Fay SHEPHERD and Sara F. Shepherd, Appellees.**

Court of Appeals of Kentucky.

March 15, 1974.

As Modified on Denial of Rehearing May 24, 1974.

Edward C. Airhart, Schaefer & Airhart, Louisville, for appellant.

Stanton Baker, Carrollton, for appellees.

JONES, Justice.

Appellees Harold Fay Shepherd and Sara F. Shepherd, the maternal grandparents of Grace Kelly Bond, age six, filed this action in the Carroll Circuit Court on August 29, 1972, seeking custody of Grace Kelly Bond from her natural parents, Maureen Bond and James E. Bond, who both resisted the action in the circuit court.

Maureen, the natural mother, was granted custody of Grace Kelly in an uncontested divorce in the Henry Circuit Court in January 1968. She then returned with Grace Kelly to Carrollton to the home of her parents, the appellees. At that time, Grace Kelly Bond was approximately nine months old.

This matter was assigned by the trial court to a special commissioner to hear evidence and make recommendations. After prolix depositions and a lengthy hearing, the special commissioner made findings of facts and conclusions of law in which he recommended that the grandparents, Harold Fay Shepherd and Sara Shepherd, be granted the custody of Grace Kelly Bond.

The court followed the recommendation of the special commissioner in this respect, and the Father, James E. Bond, appeals.

James E. Bond contends that since he is the natural father and was found by the special commissioner to be fit and suited to the trust, the trial court erred.

It is significant, we think, to quote the pertinent portion of the special commissioner's report, upon which James relies, and which was ignored by the trial court. He states:

"Though there are differences in what can be afforded the child by her father and grandparents, these differences are minor and of no consequence to the basic issue of this case. Both the father and grandparents have good homes and are able to supply the physical necessities required by the child. The proof establishes that the Shepherd's have performed a good job caring for the child, and indeed the father makes no complaint of their care of the child. The same is true as to the father, and the evidence indicates that he and his present wife would properly take care of the child, if custody were awarded the father."

Maureen, the mother, had a long-standing history of instability. She had a drinking problem; and for several months, she had lived with a man to whom she was not married. On two occasions after the award of the custody of Grace Kelly Bond to her she was a patient in a mental institution for emotional problems. The trial court followed the recommendation of the special commissioner and made a specific finding that Maureen was unfit to have the custody of her daughter.

The presentation of a problem such as is manifested here is vexatious. However, the thread that runs so true in all matters relating to custody of children is that when a natural parent and one not the natural parent are equally fit, the natural parent shall prevail. We do not construe KRS 403.270, enacted in 1972, as affecting the ordinary preference accorded by the law to the natural parent as against a nonparent.

In James v. James, Ky., 457 S.W.2d 261 (1970), we stated that in the many custody cases brought to the attention of this court, particularly between a natural parent and a person not a natural parent, our rule has been indefinite and confusing. We undertook in *James*, supra, at 263 to redefine our rule as it should apply as between a natural parent and one not a natural parent when we said:

"Accordingly, we hold that the natural parent is entitled to the custody of his child unless it is shown that the natural parent (1) is unsuitable to have custody, or (2) is harmful to the child, or (3) has contracted to give his child away, or is clearly estopped to claim custody."

Although the special commissioner found that the father acquiesced in the arrangement for his daughter to stay with her grandparents, and although the trial court adopted that finding, we are not persuaded that the father was estopped to claim custody of his daughter.

From the evidence presented, it is abundantly clear that James E. Bond, the father, has a good relationship with Grace Kelly Bond. Pictures taken of Grace Kelly with her father and stepmother and filed as exhibits depict a wholesome, healthy, happy little girl. The father through the years had kept up child support payments and had been granted liberal

visitation rights. In fact a reading of the evidence heard before the trial commissioner indicates that visitation rights precipitated this action, that this action was instituted because the father had too much visitation. The appellees both testified that they wanted only temporary custody until Maureen was capable of taking care of the child.

■ Mr. and Mrs. Shepherd now contend that the factual circumstances surrounding the status of James Bond at the time of the trial have changed because of a pending divorce action between him and his present wife. They indicate that this shows that James is no longer suited to the trust. We do not agree. The special commissioner made his findings on January 31, 1973. These findings were incorporated in a judgment signed and entered by the trial court on June 18, 1973. Matters respecting the parties since that date are not before the court for review.

■ We are convinced from the evidence that James E. Bond is better qualified, as a matter of law, from the standpoint of age and financial condition to have the custody of his daughter, Grace Kelly Bond. Our conviction is bolstered by the fact that the mother, who was found morally unfit to have custody, will still reside in her parents' home, and that were the grandparents to have custody the child still would be under the mother's influence in a great measure.

The judgment is reversed for proceedings consistent with this opinion.

All concur.