Dottie Frances CHANDLER, Appellant,

v.

William CHANDLER, Appellee.

Court of Appeals of Kentucky.

Oct. 3, 1975.

C. B. Creech, Creech, Hogg & Williams, Ashland, for appellant.

James P. Stavros, Wilson & Stavros, Ashland, for appellee.

PALMORE, Justice.

By an agreement incorporated therein the judgment dissolving the marriage provided that the mother, Dottie Chandler, "shall have the care, custody and control of the parties' child, William Paul Chandler, age 2½, and the Second Party [William Chandler, the father] shall have reasonable visitation rights." It was entered on August 2, 1974.

On October 30, 1974, on its own motion *ex parte,* without any notice or hearing, the trial court entered an order redocketing the proceeding and, "Upon the basis of information received by the Court," determined that the best interests of the child would be served by transferring its custody to "the Paternal Grandparents of said child," whereupon it was so directed. A copy of this order was mailed to and received by the child's mother.

Meanwhile, on October 26, 1974, at Cleveland, Ohio, where Dottie was seeking employment, she and William signed an agreement specifically recognizing that the child "is in the legal custody of Dottie Chandler and will remain as such," but transferring temporary custody to the father "until Dottie Chandler has definate [sic] plans for Billy's care. Such as (1) In the event Dottie returns to Ky. to live permanently. (2) Dottie has proper facilities available for Billy's care while she works and (3) In the event that Dottie remarries." Testifying later, William explained that he had come

**72**

to Cleveland at Dottie's request to get the child and that he signed the agreement because "I figured I would have to sign it for to get him back or I would get picked up for kidnapping."

On December 26, 1974, Dottie moved for an order returning custody of the child to her. In response, William asserted that by an order of the Boyd County Court dated November 20, 1974, his father and mother had been appointed as guardians for the child, and that Dottie had been notified but had not appeared at the hearing on their application for such appointment. The motion was denied without a hearing, but upon a renewal the trial court held a hearing and then entered findings of fact, conclusions of law and a final order again denying the motion.

It would be very helpful, and might sometimes obviate the time and expense of appeals, if lawyers and judges would pay some attention to the statutes governing matters of this sort. The statute applicable to this proceeding is KRS 403.340. It sets forth the only way in which a custody decree may be modified within two years after its date. This record discloses no semblance of compliance with it.

There was no authority for the order of October 30, 1974, and the fact that Dottie received a copy does not legitimate it.

There has been no motion by either party that the judgment of August 2, 1974, be modified, and the final order of the trial court refusing to enforce it was erroneous.

Since there appears to be some confusion as to the nature of a parent's rights as against those of nonparents with respect to child custody, the rule is that not only must it be shown that the child's welfare will be better served under the custody of the nonparent, but also it must be found that the parent is not a suitable custodian. Cf. *James v. James*, Ky., 457 S.W.2d 261, 263 (1970); *Bond v. Shepherd*, Ky., 509 S.W.2d 528, 529 (1974). Neither KRS 403.-270 nor KRS 403.340 modifies this principle.

The guardianship proceeding in the county court is not relevant to the matter of custody.

The order is reversed for entry of a new order consistent with this opinion.

All concur except LUKOWSKY, J., not sitting.