**Douglas Wayne McNAMES and Carol Lou Schmidt, Appellants,**

v.

**Phyllis Ann CORUM, et al., Appellees.**

Supreme Court of Kentucky.

Sept. 13, 1984.

As Modified Jan. 17, 1985.

Theodore H. Amshoff, Jr., Richard W. Hill, Amshoff & Amshoff, Louisville, for appellants.

Kelly Ann Miller, Robert Frederick Smith, Legal Aid Society, Inc., Louisville, for appellees.

GANT, Justice.

Appellants, husband and wife, filed an action in the Trimble Circuit Court seeking to adopt the infant son of appellee, Phyllis Ann Corum, or, in the alternative, seeking custody of said child. The adoption proceeding was dismissed as premature under KRS 199.470(3), which appellants concede was correct. The only issue remaining herein is the judgment of the trial court awarding custody of the infant child to the natural mother. This Court granted transfer from the Court of Appeals in order to expeditiously determine this matter and to attempt to minimize the inevitable heartache which arises in such cases.

The facts of this case fall into the classical pattern of private adoptions. The appellants are college educated, successful persons, motivated by a true desire for children, and frustrated by four miscarriages, a prematurely born infant who died, and the prospect of a five-year wait for public placement. The appellee is a 16-year-old unwed mother, who was denied financial support by the father of the child who lived in Alabama. Her mother and stepfather insisted, upon learning of the pregnancy in the seventh month, that appellee decide for herself whether to keep or surrender the child, without any promise of financial aid from them. It should be added at this point that, once her decision to keep the child was made, the parents became completely supportive.

Faced with her position of poverty, despair and depression, appellee contacted a physician who was recommended to her as specializing in private adoptions. This physician, in turn, contacted an attorney with

the same specialty. The attorney[1] then contacted Phyllis and her mother and a deal was struck by which she would place her expected child for adoption in return for the agreement that the prospective parents would pay her doctors' and hospital bills, and, of course, the attorney would be paid by the prospective parents.

At this juncture, according to the testimony, Phyllis understood that no one could have custody of her infant until her rights were terminated by court and that she "could get the baby back any time" until then. The appellants were aware that Phyllis could change her mind before her parental rights were terminated or surrendered and that "there was a risk involved."

On February 9, 1984, the child was born, and Phyllis signed an affidavit to release the child to the attorney so the attorney could take the child from the hospital, which he then did a few days later. After telephone and personal confrontation with the father and further denials of assistance, Phyllis made her decision to keep the child, whereupon her parents pledged their support. She notified the attorney of this decision on March 6, 1984, and requested return of the child, this being about three weeks after the child had been lodged with the appellants. Return was denied, and this action was filed March 17, 1984.

In the instant case, there is no contention that the natural mother has terminated her parental rights or that she has abandoned the child; nor does the evidence justify any holding that she entered into an agreement of a permanent nature that the appellants should have custody of her child. There is also no circumstance from which quasi-estoppel could arise.

 The thrust of the argument of appellants focuses almost entirely on their contention that the court failed to consider the best interest of the child. Under the circumstances of this case, the best interest of the child was properly excluded by the trial court. It is our holding that, before any court even considers the best interest of the child in an action involving parent and non-parent, except in unusual circumstances not present here, there must first be a showing that the parent is not a fit person to have custody. As the court stated in *Chandler v. Chandler*, Ky., 535 S.W.2d 71 (1975):

> Since there appears to be some confusion as to the nature of a parent's right as against those of non-parents with respect to child custody, the rule is that not only must it be shown that the child's welfare will be better served under custody of the non-parent, but *also* it must be found that the parent is not a suitable custodian. *Cf. James v. James*, Ky., 457 S.W.2d 261, 263 (1970); *Bond v. Shepherd*, Ky., 509 S.W.2d 528, 529 (1974).

 Worded another way, custody of a child by a suitable natural parent and best interest of the child are one and the same.

The lower court having found that the natural mother is, in fact, a suitable parent, the judgment awarding her custody is affirmed.

All concur except WINTERSHEIMER, J., who dissents and files a dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion.

Although it is difficult to dispute the cold legal logic of the majority, I believe this Court should give a broader interpretation to the phrase "best interests of the child."

In this type of case, any jurist must be blessed with Solomon-like wisdom when faced with the agonizing decision between a biological mother and adoptive parents of obvious sincerity and good will. Either party faces an agonizing loss. In any such proceeding, the truly innocent party is the infant child. Therefore, I believe it is entirely appropriate to carefully consider the best interests of the child at all stages of the proceedings. The infant baby boy who

---

**1.** This is a different attorney from the attorney who prosecuted this action on behalf of the appellants.

**248**

is the subject of this litigation, is most certainly "an important human being" as in *Van Wey v. Van Wey,* Ky., 656 S.W.2d 731 (1983). It is the infant child who will be impacted with the consequences of the ultimate decision. No other action involving an unmarried infant could ever be more important in this child's life than the ultimate adjudication of his custody and future home. Consequently, I believe this Court should direct that a guardian ad litem be appointed in all such proceedings.

I would extend the "best interests" principle to all stages of the proceedings. For an additional discussion of this concept, *see Natural Parent Preferences, or the Child's Best Interests,* 12 U.C.L.A.-Alaska Law Review, 141 (1983), and *Alternatives to Parental Rights in Child Custody Disputes Involving Third Party,* 73 Yale Law Journal, 151 (1963).

Here the result will not be in the best interests of the child and I cannot agree to it.