Christopher LEACH, Appellant,

v.

L.D. HARRISON; and Debra L. Harrison, Appellees.

No. 2009–CA–000622–ME.

Court of Appeals of Kentucky.

March 11, 2011.

Kimberly Carter Blair, Winchester, KY, for appellant.

James W. Baechtold, Richmond, KY, for appellee.

Before NICKELL and WINE, Judges; SHAKE,[1] Senior Judge.

## OPINION

WINE, Judge:

Christopher Leach ("Chris"), a father, appeals an order of the Estill Circuit Court granting permanent sole custody of his minor children to their maternal grandparents, Debra and L.D. Harrison (the "Harrisons"). On appeal, he argues that the trial court erred in finding him to be an unfit parent and by finding that it was in the best interests of the children to be placed with the Harrisons. We disagree.

### Factual Background

Christopher Leach married Emily Leach ("Emily") on December 7, 2003 and three children were born of the marriage, J.L., H.L. and N.L. J.L. and H.L. are twins, both of whom were three years old at the commencement of this action. N.L. was less than a year old when this action arose. The sole question on appeal concerns Chris's fitness to have sole custody of the children as Emily stipulated to neglect in the Madison Circuit Court and does not appeal.[2]

Before the eventual removal of the children from the home, over eight investigations were opened by the Department for Community Based Services ("DCBS"). These investigations turned on Emily's abuse and neglect of the children, including excessive corporal punishment. Although Chris was only personally named in one such investigation, he was implicated in each of them for his failure to prevent Emily from abusing and/or neglecting the children.

On August 8, 2006, H.L. was placed temporarily with the Harrisons through DCBS under a temporary voluntary family placement. It appears that J.L. was staying with his paternal grandparents at this time. On August 16, 2006, the Harrisons, already having temporary custody of H.L., filed a petition for temporary emergency sole custody of J.L. The court granted emergency relief allowing the Harrisons to gain temporary custody of J.L. Thereafter, on August 21, 2006, the Harrisons filed verified petitions for the permanent sole custody of both J.L. and H.L.[3]

On September 19, 2006, after the two eldest children had been temporarily removed from the home and placed with the Harrisons, the children were returned to the Leaches upon recommendation of the Domestic Relations Commissioner ("DRC"). However, the September 19, 2006 order directed that the Leaches were not to corporally punish the children. It further awarded weekly visitation to the Harrisons. Thereafter, the Leaches failed to produce the children for twenty-three regularly scheduled visitations.

In August of 2007, Emily corporally punished J.L. in violation of the court's

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580. The term of senior judge service for Senior Judge William R. Harris, who concurred in the opinion originally rendered by the Court, expired prior to the remand of the case by the Supreme Court of Kentucky. Senior Judge Shake was assigned to replace Senior Judge Harris on the panel reviewing the case on remand.

2. This action first arose in Madison Circuit Court before venue was determined to be improper and was transferred to Estill Circuit Court.

3. It appears that the Harrisons did not seek custody of N.L. at this time as he was placed with Chris's parents where Emily resided while she was still breastfeeding N.L.

order and Chris failed to prevent such corporal punishment. Shortly thereafter, the two eldest .children were again removed from the Leaches' care and placed in the temporary custody of the Harrisons. DCBS alleged that Chris neglected the children by failing to protect them from Emily's physical abuse. On August 24, 2007, the Harrisons again petitioned for permanent sole custody of the children. J.L. and H.L. have lived with the Harrisons since that time. The infant, N.L., was not placed with the Harrisons until December of 2007, but has remained in their care since that time. DCBS substantiated the abuse allegations against Emily and found that both Emily and Chris had engaged in neglect of all three children. Thereafter, Emily stipulated to neglect in Madison Family Court. Chris did not stipulate to neglect, but was nonetheless found by the Madison Family Court to have neglected the children.

Venue in the case was thereafter transferred to Estill Circuit Court. The final hearing in Estill Circuit Court, concerning Chris's fitness to be the sole custodian of the children, was held on October 30, 2008. Thereafter, the DRC recommended awarding Chris custody, granting · visitation rights to the Harrisons, and allowing for Emily to regain visitation rights at some point in the future. However, the DRC also recommended that the children were not to be immediately returned to Chris, but were to be slowly reintroduced to their father over the course of the next few months. The Harrisons filed exceptions to the recommendation.

On February 19, 2009, the trial court entered an order rejecting the recommendations of the DRC; finding that Emily presented "a serious danger to the physical, mental, and emotional health of [the children]" and that Chris was "incapable of protecting the children from such danger." Notably, the trial court found that it "fear[ed] three potential homicides" if the children were returned to Chris. The trial court noted that Chris seemed incapable of protecting the children from Emily. Thus, the trial court granted permanent sole custody of the children to the Harrisons. Chris was granted unsupervised visitation with the children.

Chris appealed, arguing that there was insufficient evidence to support a finding he was unfit to have sole custody of his three minor children. In our initial review of this case, we determined, *sua sponte,* that the Harrisons lacked standing to bring the case and that the trial court lacked. subject matter jurisdiction to review the case due· to the repeal of Kentucky Revised Statute ("KRS") 403.420.[4] KRS 403.420 was the statute formerly set forth in the now-repealed Uniform Child Custody Jurisdiction. Act ("UCCJA") that allowed for a non-parent (other than a *de facto* custodian) having physical custody of a child, ·to initiate a. custody action in circuit court. The Supreme Court, having accepted the case for discretionary review, held that standing can be waived in the Commonwealth and that circuit courts, as courts of general jurisdiction, have subject

---

4. This Court relied on *J.N.R. v. O'Reilly,* 264 S.W.3d 587 (Ky.2008), where the Court found that a putative father did not have standing to bring a paternity action regarding a child born "in wedlock" and *further found* that circuit courts do not have subject matter jurisdiction to hear cases brought by putative fathers of children born "in wedlock" because the paternity statutes in Chapter 406 only refer to children born "out of wedlock" and the custody statutes in Chapter 403 do not "govern whether a trial court has subject-matter jurisdiction to determine custody of children in cases not involving a dissolution of marriage." *Id.* at 594. The Court in *J.N.R.* did not find that circuit courts, *as courts of general jurisdiction,* had subject matter jurisdiction over all paternity cases.

matter jurisdiction over all child custody matters (including suits by nonparents who are not *de facto* custodians) regardless of whether there is a statute specifically allowing for such suit.

As such, the Supreme Court remanded the case to this Court for a determination on the merits. Accordingly, we now address the merits of this appeal.

### Argument

■ Chris's sole argument on appeal is that the trial court's finding that he was an unfit parent was unsupported by substantial evidence. A trial court's findings of fact in an order determining child custody can only be set aside by a reviewing court where those findings are clearly erroneous. *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986); Kentucky Rule of Civil Procedure ("CR") 52.01. In making a determination of whether findings are clearly erroneous, a reviewing court must look to whether those findings are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). Upon our review of the present case, we find that the Estill Circuit Court's findings are supported by substantial evidence.

■ Our task on review of this case is somewhat complicated by the fact that, since the repeal of KRS 403.420, there is no longer a statute directing the standards

to be applied by the trial court in this situation. As there was an abundance of case law discussing the standards imposed by statute before the repeal of the UCCJA, we will use the standards previously employed by our courts in the case of nonparents seeking custody.[5] Traditionally there have been two ways recognized in the Commonwealth for a nonparent having physical custody of a child to challenge a biological parent's superior right to the child: (1) by a showing of unfitness that would otherwise be sufficient to support an involuntary termination of the parent's rights, or (2) by a showing that the parent has waived their superior right to custody by some voluntary act on their part. *Moore v. Asente*, 110 S.W.3d at 339–340. We agree with the trial court that only the first of these two exceptions is applicable in the present case, as the facts of this case do not support a waiver.

■ To challenge custody based upon unfitness, the nonparent having physical custody is required to show, by clear and convincing evidence, that the parent has engaged in behavior that could result in the termination of parental rights by the State. *Id.* at 360. If such a threshold showing is made, a trial court may then determine custody under a "best interest of the child" standard, whereby the nonparent is on equal footing with the parent.

5. However, we realize that the statute(s) cited in many of these cases will no longer be good law in light of the repeal of the UCCJA. Such an analysis may now have to be based upon judge-made law rather than statutory interpretation. See, e.g., *Boone v. Ballinger*, 228 S.W.3d 1 (Ky.App.2007). However, there does appear to be at least one statute which was not affected by the repeal of the UCCJA in which the two exceptions in *Moore v. Asente* may find root. In the case of *Raddish v. Raddish*, 652 S.W.2d 668 (Ky.App.1983), this Court cited KRS 405.020(1) which states that "The father and mother shall have the joint custody, nurture, and education of their chil-

dren who are under the age of eighteen (18). If either of the parents dies, the survivor, *if suited to the trust,* shall have the custody, nurture, and education of the children who are under the age of eighteen (18)." (Emphasis added). In *Raddish*, we held the phrase "if suited to the trust" was applicable, not only in the case of the death of a parent, but also in a case where one of the natural parents is unfit or abandons a child. *Id.* at 669. Notably, it appears that KRS 405.020(1) may provide some evidence that the Legislature did not intend to do away with the ability of nonparents to bring custody actions when it repealed the UCCJA.

*Id.* See also, *Chandler v. Chandler,* 535 S.W.2d 71, 72 (Ky.1975) ("Since there appears to be some confusion as to the nature of a parent's rights as against those of nonparents with respect to child custody, the rule is that not only must it be shown that the child's welfare will be better served under the custody of the nonparent, but also it must be found that the parent is not a suitable custodian.")

█ Accordingly, we first review the trial court's order to determine whether a finding of unfitness was made with respect to Chris and whether such finding was supported by substantial evidence. The trial court made the following pertinent findings in its order.

> Based on the testimony at the hearing, including the testimony of both Chris and Emily, the Court finds Emily to be a serious danger to the physical, mental, and emotional health of [the children] and finds that Chris is incapable of protecting the children from such danger.
>
> . . .
>
> This Court fears three potential homicides if the children are returned to Chris even though he may have the best of intentions because he has admittedly trusted Emily's excuses and explanations in the past and continues to express faith in her. . . .
>
> . . .
>
> The evidence has shown that both Chris and Emily have engaged in conduct which could result in the termination of their parental rights. . . .
>
> . . .
>
> [T]he Court finds that it would be in the best interest of the minor children that sole custody be granted to [the Harrisons].

Thus, the trial court did make a finding that Chris was unfit. Further, the trial court applied the proper standard for un-

fitness, as it stated that Chris had "engaged in conduct which could result in the termination of [his] parental rights." Finally, the trial court also used the proper standard in making its custody determination by using the "best interest of the child" standard. As such, we need only determine whether the trial court's finding of unfitness was supported by substantial evidence.

█ At the hearing, evidence was introduced showing that Chris either allowed or failed to stop Emily from harming the children. In *Davis v. Collinsworth,* 771 S.W.2d 329 (Ky.1989), the Supreme Court listed several types of evidence which could be used to show unfitness on the part of a parent in a custody battle with a third party. *Id.* at 330. One such type of evidence identified by the court was "evidence of inflicting *or allowing to be inflicted* physical injury, emotional harm or sexual abuse." *Id.* (Emphasis added). Accordingly, Chris need not have physically or emotionally harmed the children himself. There was ample evidence from the DCBS investigations as testified to by DCBS workers and from other evidence presented at the hearing that Chris had either allowed or failed to stop Emily from physically and/or emotionally harming the children. See also, KRS 625.090(2)(c). Further, there was already an adjudication of neglect by the Madison Family Court. KRS 625.090(1)(a)(2). Thus, we find that the trial court's determination that Chris was unfit was supported by substantial evidence.

Accordingly, we affirm the Estill Circuit Court.

ALL CONCUR.