## Barker v. Stearns Coal & Lumber Co.

June 16, 1942.

Kennedy & Kennedy for appellant.

H. C. Gillis for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing in part and affirming in part.

C. M. Barker, doing business as Citizens Milling
Company, at Somerset, acquired $18,000 of scrip issued
by the Stearns Coal & Lumber Company. These tokens
were redeemable only in merchandise equivalent in value
to the amounts indicated by numbers stamped on them.
They were also marked as non-transferable. Barker
demanded payment of the scrip in cash on a regular pay-
day of the company but it was refused and he sued to re-
cover the aggregate value. His petition was dismissed
on demurrer. We reversed a judgment on the ground
that Chapter 44, Acts of 1932, published as Section
4758b-2, Statutes, under which the scrip had been is-
sued, was unconstitutional. Barker v. Stearns Coal &
Lumber Company, 287 Ky. 340, 152 S. W. (2d) 953.

Upon the return of the case to the trial court the
defendant answered. The first paragraph of the answer
was a traverse. The second paragraph alleged that the
scrip had been issued to the defendant's employees for
wages earned and unearned under the Act of 1932, and,
since that was void, the tokens and promises represented
by them were likewise void. The third paragraph
pleaded that the plaintiff had not complied with the
terms of Section 4758b-1, of the Statutes, which is an
Act of 1924, separate and distinct from the 1932 Act, in
that he nor anyone else had kept a record showing the
names of the persons from whom the scrip was acquired,
the amounts paid therefor, and other information, nor
presented same to the defendant when payment was de-
manded as is required by that statute. It pleaded that
the observance of these terms were and are conditions
precedent to the right to require redemption of the scrip
in cash and to the maintenance of the action, and that
the failure of the plaintiff to comply constituted a com-
plete defense. Paragraph four of the answer alleged
that ''a large amount of the scrip sued on by the plaintiff
herein was issued by the defendant to its employees as
a medium of credit for unearned wages, or in anticipa-

tion that labor would be performed thereafter, or upon the credit standing and rating of employees to whom same was issued, and upon the faith and confidence of the defendant in the integrity and ability of such employees to pay, or for other reasons, and not as credit for, or in payment of, wages earned or labor performed; and a large part of said scrip was issued in payment for mine timbers, produce and other commodities purchased by the defendant, and in payment of other obligations of the defendant, and all such scrip was issued and accepted upon the conditions that same was non-transferable and payable in merchandise only to the employees or other persons to whom same was issued, and such scrip was, and is, non-transferable and redeemable only in merchandise, and plaintiff has acquired no right, title or interest therein and has no cause of action thereon and the defendant is under no obligation to redeem any of said scrip so issued from the plaintiff, and the defendant is not now, and at no time has been, under any obligation to redeem such scrip except in merchandise from the employees or other persons to whom same was issued.''

A demurrer was sustained to the second paragraph of the answer. The court also sustained the plaintiff's motion that the defendant be required to make the allegations of the fourth paragraph more definite and specific in stated particulars. When the defendant had responded that it was physically impossible to comply with the order of the court and that it was, therefore, forced to decline to do so, on plaintiff's motion paragraph four of the answer was stricken.

The reply admitted the plaintiff had not kept the records or presented the verified statement stipulated by the 1924 Act. Section 4758b-1 of the Statutes. In avoidance of the defenses it pleaded that the company had waived the record and its presentation by (a) its actions, and (b) its long custom of issuing and permitting the use of its scrip in McCreary and adjoining counties as a medium of monetary exchange and in recognizing title to have passed thereto by delivery only, in which manner the plaintiff had acquired the scrip sued on. It was further pleaded the conditions of the statute were not applicable because (c) none of the scrip had been acquired directly from the company's employees to whom it had been issued, but from third persons, retail merchants, in exchange for flour and other mill products at face value, .

and (d) plaintiff has acquired title by assignment and delivery through different hands. A rejoinder completed the issues. When all the evidence had been introduced the court peremptorily instructed the jury to return a verdict in favor of the plaintiff for $6,612.90, with interest. Judgment for that sum was entered and the petition dismissed to the extent that it sought to recover more. The plaintiff appeals and the defendant has filed a cross appeal.

Since it was not within the power of the legislature to authorize non-transferable scrip, redeemable only in merchandise, as payment of earned wages because of the provision of Section 244 of the Constitution, as held in the opinion on the first appeal of this case, the scrip issued under the unconstitutional statute must be regarded as subject to the terms of the 1924 Act, which authorizes the issuance of transferable scrip, redeemable in cash upon compliance with conditions designed for the protection and convenience of the employer. The terms of that Act became integral parts of the scrip. Carrs Fork Coal Co. v. Johnson Drug Company, 249 Ky. 371, 60 S. W. (2d) 952. True, we expressed the opinion of a majority of the court that there is no hindrance to the enactment of a statute authorizing the issuance of non-transferable scrip, redeemable in merchandise, as a means of evidencing the extension of credit for unearned wages; nevertheless, for reasons stated, it was necessary to declare the 1932 Act unconstitutional in its entirety. The record as it then stood showed all the scrip involved in the suit had been issued for wages. However, the record now is that the defendant, Stearns Coal & Lumber Company, issued scrip not only in payment of wages, both earned and unearned, but in large amounts for mining timbers and other commodities and some as charity; also in satisfaction of liability under the Workmen's Compensation Act—the spirit if not the letter of that act apparently to the contrary notwithstanding.

We cannot agree that because the particular statute under which the scrip was issued was void, the obligations themselves became void. No person or private corporation can escape liability for its admitted obligations upon such ground. Section 244 of the Constitution, which requires the payment of wages of workmen for corporations to be paid in lawful money is self-executing; and the right to substitute even a temporary promise to pay

has always been questioned. The 1924 Act authorizes scrip to be issued to labormen for wages upon the theory of it being the equivalent of and redeemable in lawful money on regular paydays. Neither that nor any statute authorizes issuance for any other purpose. Scrip issued and accepted for purposes other than wages constitute duebills or promises to pay according to their terms, coupled with general custom in relation thereto. The undisputed testimony is that above 75% of all the business transacted in McCreary County is done by and with the defendant's scrip, and that its tokens pass by delivery among the people as money. The officers of the company testified, however, that no scrip had been redeemed in cash except on rare occasions for the churches, where it had been placed in the collection plates, and when given as contributions to the children's milk fund. The scrip was accepted by the company not only for merchandise in its ten or eleven retail stores, but in payment of rent, admissions to pool rooms and picture shows, for funeral bills and any other service or commodity which the company had to sell.

In the first opinion we drew a distinction between scrip given as payment of earned and as an advancement of unearned wages, and held that it should be presumed that all the scrip then and yet involved had been issued for earned wages; hence, that it was transferable and redeemable in cash according to the 1924 Act. This placed the burden upon the defendant to prove what portion of the scrip sought to be redeemed in cash and to be collected by this suit was issued for other purposes than earned wages. When directed by the court to make its pleading on this issue more definite and specific, the company responded, as we have stated, that it was impossible to do so. And although on that account its plea had been stricken from the answer, the defendant introduced evidence showing that on May 15, 1939, when Barker demanded payment in cash of that which he owned, the company had outstanding scrip the equivalent of $44,041. About 44 per cent of that issued between April 1, 1938, when the company began using metal instead of paper scrip, and May 15, 1939, had been given to employees for wages which they had then earned, and about 56 per cent for unearned wages and for other purposes. The court, apparently intending to set aside the order striking paragraph four of the answer, admitted and considered this evidence. He applied those per-

centages to the amount of scrip held by the plaintiff (in round numbers $15,000, he having disposed of $3,000) and gave him judgment for 44 per cent thereof, namely, $6,612.

This decision and determination obviously had the effect of sustaining the plaintiff's contention that the defendant had waived compliance with the conditions of presentation of the verified statement stipulated in the 1924 Act, Section 4758b-1 of the Statutes. The defendant as cross-appellant is insisting that this was error. The plaintiff as appellant, among other contentions, is insisting that it was error to use the basis upon which the judgment was rested, not only because there was no pleading to support the proof, but because it was not proper to apply the percentage of all outstanding scrip to the classification or division of his particular scrip.

We take up first the question of waiver. Barker took all his scrip to the main office of the company at Stearns on a regular payday and requested cash for it at what appears to have been the cashier's window. He was advised there that cash would not be paid for the scrip, and was referred to Henderson, an executive officer of the company. Barker renewed his demand of Henderson and told him he had an opinion from an Assistant Attorney General that the scrip should be redeemed in cash. He responded that, ''he did not care a damn what anybody else said, they were not going to redeem it in cash.'' The statement is undisputed. No request at any time was made of Barker that he produce a verified statement of the persons from whom the scrip had been acquired and of other facts stipulated by the statute. Some point is undertaken to be made by the appellant as to the sufficiency of the demand for redemption in cash, because the larger part of it was left in his car and only a sack of it was actually presented. We think it was sufficient. Although Henderson testified he did not intend to waive the requirements of the law, we quite agree with appellant's counsel that Henderson at the time said what he meant and meant what he said—emphatically so. The company, through him, is chargeable with the reasonable and natural consequences of his statements and conduct, regardless of his denial of intention. Griffith v. Clark Mfg. Co., 212 Ky. 498, 279 S. W. 971. Later Barker's attorney wrote the president of the company advising him that his demand for redemption of the scrip had

been declined, but before engaging in litigation he asked him if it would be paid. The president replied that he was advised by counsel that the company was not required by law to redeem any of the scrip in cash. Consistently in the courts until after a reversal of the first judgment, the company relied upon that defense and never demanded the verified statement provided for by Section 4758b-1 of the Statutes.

In the first opinion of this case we stated that the presentation or the verified statement could be waived, citing in support Elkhorn Piney Coal Mining Co. v. Elvove, 237 Ky. 570, 36 S. W. (2d) 3, and Hoskins Grocery Co. v. Creech Coal Co., 247 Ky. 8, 56 S. W. (2d) 555, in which the question was directly involved and where the facts were not materially different from the demand and refusal described in this record. The company draws a distinction. In those two cases and others it appears a record had been made by the holder of the scrip and only a failure to present it was involved. No record was kept here. We cannot see the distinction. The only purpose of keeping the record is to disclose its facts to the company issuing the scrip. That is the major act and the essential thing and its waiver carries a waiver of a failure to keep the record.

Another argument is that there was no intention to waive the record or its presentation. We would not deny that the company was justified in relying upon the 1932 Act and in declining to redeem the scrip in cash because it authorized nontransferable scrip redeemable in merchandise, for the record of this case shows that a majority of this court first believed it to be constitutional. The opinion was withdrawn on a petition for rehearing and we finally held the Act to be unconstitutional.

The common definition of a legal waiver is that it is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon. Waiver may be expressed or inferred from a failure to insist upon recognition of the right or conformance with the condition. Roberts v. Moss, 127 Ky. 657, 106 S. W. 297, 32 Ky. Law Rep. 525, 17 L. R. A., N. S., 280; Western & Southern Life Ins. Co. v. Van. Hoose's Adm'r, 283 Ky. 577, 142 S. W. (2d) 145. Although not truly interchangeable terms, because usually of the absence of the other party having been misled, a

waiver is in the nature of an estoppel and is maintained on similar principles. In the application of the law of waiver here emphasis is placed upon the elements of knowledge and intention. Intention necessarily involves knowledge. In the ordinary experiences of life it is seldom that one maintaining his right in a particular instance would actually intend to relinquish anything of which he had actual knowledge that was determinative of his right; hence, more often than otherwise knowledge and intent are constructive. And within that classification perhaps the larger number of instances rest upon the absence of knowledge of the existence or effect of some law or principle of law. The definition and the doctrine of waiver are predicated on knowledge of a fact, the existence of which the right depended. Our attention has not been called to any case of escape from a waiver predicated on a misconstruction of or unfamiliarity with the law touching the subject matter. Thus in the matter of waiver of some condition which would have saved an insurance company from liability on its policy, there is often involved a close construction of the law. Likewise the legal effect of an act in the matter of waiving immunity from or defect in service of judicial process. A party to a suit or his attorney often ignorantly makes some move which operates to bring him into court when had he not made it he would be out. He has thereby done the very thing he did not intend to do. The same is true as to innocently waiving some right during the trial of a case. And in criminal law men are held everywhere to be responsible for their acts upon the imputation of knowledge of the law and a criminal intent. The illustrations are innumerable. These would seem sufficient to disclose that the defendant is chargeable with a constructive knowledge and must be deemed to have waived the right to require the presentation of the statement provided for in Section 4758b-1 of the Statutes. The company proceeded in confidence upon the prima facie right afforded by Section 4758b-2 of the Statutes, and the other party to the transaction proceeded with equal assurance upon the belief that statute was invalid. It is a sound and fundamental policy of government that one cannot be wilfully ignorant of the law. That is so whether it be a common and well-known statute or criminal law, or, as it was here, a close and highly technical construction of the Constitution, believed by the legislature to be proper and, as stated, for

a time by a majority of the members of this court of last resort. It is that policy of a conclusive presumption of the knowledge of the law which charges the defendant with a waiver and its consequences.

We turn to the consideration of the appellant's argument that it was not proper for the court to apply the percentages of all outstanding scrip of the company, namely, 44 per cent issued for earned wages and 56 per cent for other considerations for which non-transferable tokens with limited redemption were not unlawful. The company is insisting here that the striking of the plea as to the different purposes for which its scrip had been issued was error and proceeds upon that hypothesis to contend for the merits of its defense in that particular. Without deciding the point, we shall proceed upon the same hypothesis in its disposition.

We adhere to the ruling in the first opinion of this case that it should be presumed that all the scrip issued to the defendant's employees was for wages earned for services already rendered, and therefore redeemable in cash by the transferee. It is the law of the case. This placed the burden upon the defendant to show what part, if any, was not issued for that purpose. It undertook to do that by proving its own records generally because it appeared there was no other method in the absence of any record of the holder of the scrip, the presentation of which the company had waived. The method is justified by the company upon the theory of a confusion of goods, as in the commingling of grain or other homogeneous commodities of the same nature and value which have lost their identity in a common mass or lot. This evidence, it is submitted, constituted an overturn of the presumption and cast upon the plaintiff the burden of going forward and proving that all the scrip was transferable and redeemable in cash under the law. The doctrine of confusion of goods is not applicable. It rests upon the fact that there has been such an intermixture of goods owned by different persons that the property of each can no longer be distinguished. 11 Am. Jur., Confusion of Goods, Section 1. Barker had and owned a certain lot of scrip. It was not commingled with the company's unissued scrip or with that held by third persons. There was no community of property or confusion of goods, the title to a portion of which was involved. The action is to collect an aggregate obligation of the de-

fendant, some of which it is claiming the right to satisfy only in merchandise and limited to the original holder. The method adopted by the court for differentiating the two classes of obligations, although seemingly fair, was not so in fact under the law. The case presents a situation not infrequently encountered where one is unable to prove his cause or to establish his defense, the result being his loss and his adversary's victory. We think the plaintiff was entitled to have his evidences of debt considered without relation to similar tokens held by some other person or persons and without having his legal rights measured by the law of averages. Under this conclusion it is apparent that the court should not only have recognized its previous ruling of striking the defense from the pleading, but should also have disregarded the evidence based thereon and have rendered judgment for the plaintiff for the total amount of the scrip proven to be held by him.

The judgment is reversed on the direct and affirmed on the cross appeal.

Whole court sitting, except Judge Ratliff.