Bobby Dwayne **GREATHOUSE**,
Appellant,

v.

Nancy Ellen **SHREVE** and Sookie
Jane Shreve, Appellees.

No. 93–SC–757–DG.

Supreme Court of Kentucky.

Jan. 19, 1995.

Joseph R. Kirwan, Hixson, Downey and Travelsted, Bowling Green, for appellant.

E. Kenneth Duncan, Duncan & Grogan, Bowling Green, for appellees.

LEIBSON, Justice.

This is a dispute over custody of Nathaniel Ray Greathouse Shreve, a child born May 16, 1984. The movant is Bobby Dwayne Greathouse, Nathaniel's natural father, and the respondents are Nancy Ellen Shreve, the child's maternal grandmother, and Sookie Jane Shreve, the child's natural mother.

Nathaniel's parents were never married. They lived together in Nancy Shreve's home at the time of the child's birth and until he was two to three months old, at which time the father moved out. The mother departed soon thereafter, and she has remained away since, except for occasional visits usually in circumstances when she needed her mother's care, such as after several automobile accidents. The grandmother took over as primary caregiver.

After being frustrated in his efforts to maintain contact with his son, in February 1990, Bobby Greathouse filed a paternity action to establish his paternal rights. He claims that he would have done so sooner but he was unaware of his rights as an unwed father. His paternity was conceded after blood tests established it.

This present case was then initiated in March 1990, by the maternal grandmother as an action to adopt the child and terminate the parental rights of both parents. It was supported by the Affidavit of the child's mother, Sookie Shreve, consenting "voluntarily" to the termination of her own rights, stating *inter alia* that she has "had very little contact with Nathaniel since he was born," and that she "believe[s] it to be in the best interest of Nathaniel to be adopted by petitioner [the maternal grandmother]."

Later, by amended complaint, the maternal grandmother dropped her claim for adoption and termination of parental rights, and this case took its present form in which Nancy Shreve asks for custody jointly with her daughter, Sookie, to the exclusion of the natural father. The case was tried before the Domestic Relations Commissioner of the Warren Circuit Court, whose findings and "Order" (approved with slight modification by the circuit judge) specified the child would be placed in the joint custody of the maternal grandmother and the natural mother, "with the Petitioner, Nancy Shreve, being the primary custodial parent, and sharing custody arrangements ... with the natural mother, Sookie Jane Shreve." The father, Bobby Greathouse, was excluded from custody, but was awarded certain specified "rights of visitation" and required to pay specified child support.

At the time of trial, Sookie Shreve was living in Florida. She was in a training program to become a thoroughbred horse groom. She testified that after completing this program she would need to work and live in Louisville to complete further educational requirements. Sookie Shreve admitted that she "cannot provide for Nathaniel myself," and therefore she supports her mother, who has taken care of the child almost since birth, as the custodial parent.

The Domestic Relations Commissioner's Findings of Fact reflect that after Bobby Greathouse initially departed the Shreve household his contacts with the child were

few and sporadic, tracing this to his lack of maturity, his working out of town, switching jobs, an unstable home life, and "drug and alcohol abuse problems during this period shortly after the child's birth." However, the testimony at the trial was that the movant has turned his life around. He is now married and regularly employed, with a stable home environment. The Commissioner found that presently Bobby Greathouse "shows signs of being able to be a mature father as well as a caring and loving father." The uncontradicted evidence from the home investigation was that the father's home as well as the grandmother's home are now "both very adequate and very appropriate for a child."

Further, the testimony at trial was that, after leaving the Shreve residence, the father's attempts to maintain contact with the child were significantly discouraged and impaired by the hostility of the maternal grandmother. She states she "prefers Nathaniel to grow up as a fatherless child." She admits that she filed a false affidavit in the initial paternity action as "the only way to completely eliminate Dwayne Greathouse from Nathaniel's life."

■ The Commissioner concluded "that KRS 403.270, which is best categorized as the 'best interest test' is the appropriate standard for review." This standard applies only where the custody issue must be decided between parents:

"The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to *each parent*." KRS 403.270(1). Emphasis added.

Underlying the Commissioner's decision to apply the best interests standard was his view that the statute applied because the mother, Sookie Shreve, joined the maternal grandmother's petition "requesting that the Court consider a joint custody arrangement between themselves [grandmother and mother]," to the exclusion of the father.

Both sides recognize, as did the trial court, that KRS 403.270, the "best interests of the child" standard, does not apply in deciding custody between a parent and a non-parent,

albeit a grandparent; that KRS 405.020(1) and a trilogy of cases from this Court recognize a parent's superior right to obtain custody of the child vis-a-vis a grandparent unless proved unfit. *McNames v. Corum*, Ky., 683 S.W.2d 246 (1985); *Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989); and *Fitch v. Burns*, Ky., 782 S.W.2d 618 (1989). The Domestic Relations Commissioner's "Conclusions of Law" and "Order," as adopted by the trial judge, utilized the best interests standard by deciding Sookie Shreve, the natural mother, should be included along with the maternal grandmother. Otherwise, the natural father could not have been denied custody since the Commissioner's findings reflect he is "suited to the trust."

Bobby Greathouse appealed on grounds the evidence was wholly insufficient to award custody to the mother, Sookie Shreve, using the best interests standard as between natural father and natural mother, and that his superior right to custody under KRS 405.020 applies as between natural father and grandmother. The Court of Appeals affirmed on the custody issue. Its Majority Opinion did not address the threshold question, whether there was any evidence supporting an award of custody to the mother, Sookie Shreve. Instead, in a split decision, the Majority finessed the father's superior right of custody under KRS 405.020 by utilizing a waiver principle:

"The situation is different, however, where the parent seeking custody has surrendered the care and custody of the child to another, particularly a grandparent, and has acquiesced in the child's remaining there for an extended period of time. In such a case the best interest or welfare of the child becomes the paramount consideration. See *Paynter v. Smith*, Ky., 481 S.W.2d 270 (1972); *Shaw v. Graham*, Ky., 310 S.W.2d 522 (1958); *Rose v. Ledford*, 306 Ky. 662, 208 S.W.2d 957 (1948); *Bridges v. Matthews*, 276 Ky. 59, 122 S.W.2d 1021 (1938); *cf. also Van Wey v. Van Wey*, Ky., 656 S.W.2d 731 (1983)." Court of Appeals Opinion, p. 3.

In a dissenting opinion, Judge Gardner states there being "no finding of unfitness on the part of the father," "the denial of custody

to the father is clearly erroneous. The precedent cited by the majority is no longer viable in light of *Davis* [*v. Collinsworth* ], *supra*."

There appears to be no serious argument for an award of custody to Sookie Shreve, using the best interests test that applies between parents (KRS 403.270). She admits that she is not at present suited for an award of custody, which is why she supports her mother's effort to obtain custody. This is probably the reason the Court of Appeals discarded this issue in reaching its decision. Joining Sookie Shreve with her mother as a basis for applying the best interests test between grandmother and natural father was a purely technical device, a method for evading the natural father's superior claim to custody "if suited to the trust" as against the grandmother, as specified in KRS 405.020(1).

█ The father was entitled to custody unless the Court of Appeals has correctly articulated and applied the waiver principle. We conclude there is a waiver principle which may be involved in a case of this nature, but that it is one more narrowly circumscribed than would appear from the Court of Appeals' opinion. This case must be reversed and remanded because the issue presented was not clearly understood and adequately addressed by the trial court, as evidenced by using Sookie Shreve as a joint custodial parent to support utilizing the best interests standard to decide custody between natural father and maternal grandparent. However, we further conclude that, upon remand, only if the trial court is persuaded the evidence is clear and convincing that the natural father waived his superior custodial right under KRS 405.020, shall custody between the natural father and the maternal grandmother be decided based on what is in the best interests of the child.

█ As stated in *Barker v. Stearns Coal & Lumber Co.*, 291 Ky. 184, 163 S.W.2d 466, 470 (1942):

"The common definition of a legal waiver is that it is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon."

Waiver differs from estoppel primarily because it does not require proof "of the other party having been misled." *Id.* "Waiver is essentially unilateral, resulting as a legal consequence from some act or conduct of [the] party against whom it operates, and no act of [the] party in whose favor it is made is necessary to complete it." Black's Law Dictionary, p. 1580, 6th ed. (1990). It is "a doctrine resting upon an equitable principle, which courts of law will recognize." *Id.*

█ Thus before applying the best interests of the child standard in deciding custody in this case, the trial court must first find the father has made a waiver of his superior right to custody, an intentional or voluntary relinquishment of a known right to custody. The Court of Appeals' opinion suggests that the father "surrendered the care and custody of the child to another, ... a grandparent, and has acquiesced in the child's remaining there for an extended period of time." Bobby Greathouse responds that the record does not support a finding he "surrendered" the care and custody of his child to the grandmother or acquiesced in the child remaining there, and that up until the end of 1989 he did not realize he had any right to his son because of the fact that he and the child's mother were never married. In any event, while surrender of care and long term acquiescence in the living arrangements are factors for the court to consider in deciding whether a waiver has occurred, they are by no means exclusive or conclusive. The trial court has yet to squarely confront the question of waiver, and to make findings of fact that establish whether a waiver occurred here.

We believe the issue as to whether Bobby Greathouse's conduct amounted to a "voluntary and intentional surrender or relinquishment of a known right" (*Barker v. Stearns Coal,* quoted *supra* ) raises serious and complex questions about the nature of the father's acquiescence in custody by the grandmother, and about the extent and duration of such acquiescence, all of which bear upon whether the waiver principle should apply here. We agree with the movant that the

cases cited by the Court of Appeals, *Paynter v. Smith*, *Shaw v. Graham*, and *Rose v. Ledford*, *supra*, are no longer controlling as precedent, and no longer enough to support denying a natural father his constitutional and statutory right to raise his own child, when considered in the light of constitutional law as set out in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and KRS 405.020. We recognize that, at present, in usual circumstances grandparents must realize, when they take in a grandchild to care for, that agreeing to care for a grandchild is a temporary arrangement, not a surrender of custody, regardless of the quality of care and the bonding that follows. A short term visit or delivery of possession shall not be construed as proof a knowing and voluntary waiver has occurred.

Nevertheless, there are circumstances which would constitute a knowing and voluntary waiver of the superior parental right to custody. This custody question is a corollary to the termination of parental rights question addressed in *Van Wey v. Van Wey*, *supra*, and *Boatwright v. Walker*, Ky.App., 715 S.W.2d 237 (1986), cases holding that once a voluntary petition agreeing to terminate parental rights to permit an adoption has been executed, withdrawal, while permissible, nevertheless waives the parent's superior right to child custody, "and the best interests of the child [then] takes precedence." *Boatwright v. Walker*, 715 S.W.2d at 244.

■ What evidence constitutes proof a parent, who is not proved unsuited to the trust (KRS 405.020(1)), has waived his or her superior custodial right when that right is challenged by a non-parent? As stated above, waiver requires proof of a "knowing and voluntary surrender or relinquishment of a known right." Because this is a right with both constitutional and statutory underpinnings, proof of waiver must be clear and convincing. As such, while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof.

Thus, the first question here is whether, considering the totality of the evidence, Bobby Greathouse engaged in a knowing and voluntary relinquishment of his superior right of custody, to which he was entitled unless proved unsuited to the trust. If he did so, the next question here is whether, in present circumstances, Bobby Greathouse or Nancy Shreve should be awarded custody in the best interests of the child. Of course, if this case is retried and at the time of trial the circumstances of Sookie Shreve vis-a-vis the child have changed significantly, and she seeks custody, her right to custody then becomes a valid consideration; the question of joint custody may also then become a valid consideration.

We reverse and remand this case to the trial court for further consideration in light of this opinion.

STEPHENS, C.J., LAMBERT and STUMBO, JJ., and Special Justice R. SCOTT PLAIN, concur.

SPAIN, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

SPAIN, Justice, dissenting.

Respectfully, I dissent, as I would affirm the decision of the Court of Appeals. In a well-reasoned opinion, the majority of the panel upheld the trial court's award of permanent custody of Nathaniel Greathouse Shreve, now ten-year-old son of the appellant, Bobby Dwayne Greathouse, and appellee, Sookie Jane Shreve. Adopting the recommendation of the Domestic Relations Commissioner, Circuit Judge J. David Francis ordered that the natural mother, Sookie Shreve, and her mother, the appellee Nancy Ellen Shreve, would have joint custody of Nathaniel, who had lived with his grandmother, Nancy Ellen, since birth. The grandmother was designated as the primary custodian as she has been the child's primary caregiver all his life.

The Court of Appeals, in my opinion, correctly applied "the best interests of the child" standard in this case, since the natural father, Bobby Dwayne, who was never married to the child's mother, clearly acquiesced for an extended period in Nathaniel's remaining with and being reared by his maternal grandmother. I have expressed my views on

this waiver doctrine at some length in my opinion concurring in result in a similar case, *Shifflet v. Shifflet*, 891 S.W. 392, which will have the same rendition date as this opinion.

WINTERSHEIMER, J., joins this dissenting opinion.