Jeanette Mitchell WILLIAMS, Appellant,

v.

Margie Ann PHELPS, Appellee,

Margie Ann Phelps, Appellant,

Jeanette Mitchell Williams, Appellee.

Nos. 96–CA–2349–MR, 97–CA–0410–MR.

Court of Appeals of Kentucky.

Feb. 6, 1998.

Darryl T. Owens, Louisville, for appellant.

Teddy B. Gordon, Louisville, for appellee.

Before COMBS, GARDNER and JOHNSON, JJ.

GARDNER, Judge.

Jeanette Williams (Williams), appeals from an order of the Jefferson Family Court denying her motion for a hearing on a custody matter and awarding custody of the child involved to Margie Phelps (Phelps). Phelps has separately appealed from an order of the family court stating that it had lost jurisdiction to consider her request for visitation. After closely reviewing this case and the applicable law, we have concluded that the court below erred by ruling that Williams lacked standing, and by declining to conduct a hearing to consider who should be granted custody of the child in this case.

The child in this case is Megan Marie White (Megan). Megan was born in June 1990, and her mother is Jane Nadine Phelps White (White). Megan was born out of wedlock. There is a dispute regarding who fathered Megan. Williams's brother, Steven Anthony Mitchell (Mitchell), believed that he was the father and claimed that he was told so by White.[1] White contends that another

1. No biological tests were ever undertaken to prove or disprove that Mitchell was Megan's father.

man was the father. Both Mitchell and the other possible father are now deceased.

Megan lived with Phelps, White's sister, during at least part of the first three and one-half years of her life. White also lived with Phelps during that time and subsequent times. In June 1993, Megan began living with Mitchell. Megan lived with Mitchell from that time until August 1996 when Mitchell died. Mitchell had a heart transplant in 1992, and in October 1995, Mitchell's health began to deteriorate. He and Megan moved in with Williams. Williams cared for Mitchell until his death and has cared for Megan until the present time.

After Mitchell's death, Phelps filed an action in family court seeking custody of Megan.[2] She contended that Mitchell was not the putative and/or biological father of Megan and that Megan should live with her since she was Megan's maternal aunt. She maintained that it would also benefit Megan to live with her other siblings who also live with Phelps.

The family court, in an order dated August 27, 1996, concluded that Williams lacked standing, because there had been no adjudication that Mitchell was Megan's biological father. The court denied Williams's motion to hold a hearing on the custody issue. The court ruled that Phelps would have the care, custody and control of Megan. Williams subsequently appealed to this Court. She later brought a petition for intermediate relief pursuant to Kentucky Rule of Civil Procedure (CR) 76.33 to stay the family court's custody order. This Court, in an order of August 29, 1996, granted the motion for emergency relief and ordered that the family court's order granting custody to Phelps be stayed. This Court noted that there was a substantial likelihood that Williams would prevail on appeal.

Following this Court's order which stayed the family court's order granting custody to Phelps, Phelps filed an affidavit with the family court seeking visitation with Megan on

every other weekend and on certain holidays. On December 16, 1996, the family court denied Phelps's request for specific visitation. Phelps asked the family court to reconsider its order. The family court, in an order of January 6, 1997, once again denied Phelps's request for specific visitation. It concluded that it had lost jurisdiction to consider Phelps's motion, because the case had already been appealed on the custody issue. Phelps has appealed from this order.[3]

First, we turn to Williams's appeal and consider the issue of standing. Williams argues that the family court erred by ruling that she lacked standing to seek custody of Megan. Based upon the facts of the case at bar, we conclude that the family court erred in deciding that Williams lacked standing.

■ In general, in order to support an action, the interest of the party must be a present or substantial interest, as distinguished from a mere expectancy. *Winn v. First Bank of Irvington*, Ky.App., 581 S.W.2d 21, 23 (1978). A party must have a real, direct, present and substantial right in the subject matter of the controversy. *Id.* Standing is the right to appear and seek relief in a particular proceeding. *See Id.*

Several courts in other jurisdictions have addressed the issue of the standing of nonparents in custody cases. In *Matter of the Custody of C.C.R.S.*, 892 P.2d 246 (Colo. 1995), the Colorado Supreme Court rejected the premise that only stepparents, blood relatives of a child or parents should be accorded standing. A nonparent having had physical custody of the child for six months or more is accorded standing. *Matter of the Custody of C.C.R.S.*, 892 P.2d at 253. This is in keeping with the child's best interests. *Id.* In Illinois, the courts have held that under that state's statute, a nonparent may petition for custody of a child but only if the child is not in the physical custody of one of the parents. *In re Marriage of Siegel*, 271 Ill. App.3d 540, 207 Ill.Dec. 907, 648 N.E.2d 607 (1995); *In re Marriage of Haslett*, 257 Ill. App.3d 999, 195 Ill.Dec. 874, 629 N.E.2d 182

---

**2.** White, Megan's mother, has not sought custody.

**3.** Phelps moved this Court to submit the case on the briefs already filed of record and on the

record filed herein. This Court granted the motion.

(1994); *In re Marriage of Dile,* 248 Ill. App.3d 683, 188 Ill.Dec. 595, 618 N.E.2d 1165 (1993). A nonparent must show that the parent has relinquished legal custody of the child rather than mere physical possession. *Id.* See also *In re Estate of Johnson,* 284 Ill.App.3d 1080, 220 Ill.Dec. 474, 673 N.E.2d 386 (1996). *Cf. Bowie v. Arder,* 441 Mich. 23, 490 N.W.2d 568 (1992) (holding between parents and nonparents, the mere de facto custody of the child by the nonparents was not enough to invoke standing for nonparents, unless nonparents were legal guardians).

■ In the instant case, Williams had standing. She had de facto custody of Megan and had cared for Megan since at least October 1995. There is evidence in the record showing that Megan's mother brought her to live with Mitchell in June 1993. When Mitchell later became ill, Williams cared for Mitchell and Megan and has continued caring for Megan after Mitchell's death. Mitchell claimed that he was told by White that he was the father, while White and Phelps claim this never occurred and that he was not the father. White, Megan's mother, is not seeking custody. Further, the petition for custody brought by Phelps clearly names Williams as a party and states that Megan resided with Williams at the time of the filing of the petition. Based upon all of these facts, under the unique circumstances of this case, Williams had standing.

Williams secondly contends that the family court erred by refusing to hold a hearing to consider whether she or Phelps should have custody of Megan, and by not applying the appropriate best interests standard in making a determination. We have concluded that the family court abused its discretion by not conducting a hearing on the matter.

■ Generally in deciding which parent should have custody, Kentucky Revised Statute (KRS) 403.270(1) provides that a court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent.

The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school and community;

(e) The mental and physical health of all individuals involved; and

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720.

KRS 403.270(1). *See also Greathouse v. Shreve,* Ky., 891 S.W.2d 387 (1995). In cases involving a parent and nonparent, a court must first find a parent unfit or to have relinquished custody, before the best interests test applies. *See Id.; McNames v. Corum,* Ky., 683 S.W.2d 246 (1984). If a parent has been declared unfit, or has relinquished custody and custody is contested between two nonparents, the best interests test applies. *Greathouse v. Shreve,* 891 S.W.2d at 391. *See also Shifflet v. Shifflet,* Ky., 891 S.W.2d 392 (1995). In *Tinsley v. Boggs,* Ky., 325 S.W.2d 335 (1959), which involved a custody dispute between a maternal aunt and the paternal grandmother, the court noted that in cases of this character, the welfare of the child is the chief concern of the court. The court has broad discretion in selecting the child's custodian. *Id.,* at 336. The judicial discretion must not be abused and is subject to appellate review. *Id.*[4] Where both parents are deceased, blood lines are rather incidental, and the welfare of the child continues to be the major concern. Ralph Petrilli, *Kentucky Family Law,* § 26.8 at p. 431 (1988).[5]

---

4. In discussing visitation, Kentucky's Supreme Court has held that the relationship which develops between a surrogate parent can be as close as that of a child to a natural parent and that a hearing should be held regarding visitation in such cases to determine the child's best interests. *Simpson v. Simpson,* Ky., 586 S.W.2d 33 (1979).

5. While Kentucky does not appear to recognize a preference for relatives in custody cases involving nonparents, the Kentucky legislature has recognized a preference in adoption cases. *See* KRS 620.090.

Courts from other jurisdictions have been faced with the issue of the proper standard to apply in custody disputes between nonparents. In *People ex. rel. Teitler v. Haironson,* 38 A.D.2d 949, 331 N.Y.S.2d 461 (N.Y.App. Div.1972), the court in adjudging a custody dispute between nonparents and nonrelatives of the child, held that the court acts as *Parens patriae,* considering the best interests of the child to decide in whose custody the child should be reared. Assuming that relator stood in *Loco parentis* to the child, this should not in itself endow him with a superior right to custody. *Id.* The court in *In re Whaley,* 86 Ohio App.3d 304, 620 N.E.2d 954 (1993), was faced with a situation where neither parent sought custody of the child, and the appellate court upheld the application of a best interests test in deciding custody between the stepmother and maternal cousin and found no abuse of discretion by the trial court. *Cf. S.M. v. A.W.,* 281 N.J.Super. 63, 656 A.2d 841 (1995) (holding that the general best interests test is applicable in a custody dispute between a maternal grandmother and an unrelated foster parent; however, the maternal grandmother is a presumptively suitable replacement for the parent); *In the Matter of the Welfare of D.L.,* 486 N.W.2d 375 (Minn.1992) (holding that based on state statute, adoptive placement with a family member is presumptively in the child's best interests, but this should not be granted automatically because the best interests vary from case to case and the trial court retains broad discretion based upon its opportunity to observe the parties, but the trial court must make detailed factual findings).

In the case at hand, the family court abused its discretion by refusing to hold a hearing to consider the merits of each party as to custody and to determine what is in Megan's best interests. The court must consider the evidence presented and apply the appropriate factors set out in KRS 403.270. As we stated earlier, Williams had standing. Kentucky has not recognized a preference for relatives in nonparent custody cases, so the best interests test must be applied. There was evidence in the record that Williams has cared for Megan in recent years but Phelps cared for Megan during her early years. Thus, we reverse the family court's order and remand this case for the court to hold a hearing in compliance with this opinion and make appropriate findings in awarding custody.

Phelps has appealed the family court's order denying her request for visitation. Phelps has made no arguments to this Court as to what specific relief she is seeking. Since the family court has not ruled on the substance of the visitation issue, we cannot consider the merits of the issue on appeal. *See Stuart v. Capital Enterprise Ins. Co.,* Ky.App., 743 S.W.2d 856 (1987). On remand, the family court must first determine after a hearing, which party will be granted custody. Following this determination, the family court must then determine whether visitation is appropriate for the party who is not awarded custody.

For the foregoing reasons, the order of the Jefferson Family Court in appeal No. 96–CA–2349–MR is reversed, and the case is remanded for proceedings consistent with this opinion. Appeal No. 97–CA–0410–MR is dismissed as moot.

All concur.