# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 27, 2009 Session

## DAVID M. SHARP  v. DEBBIE and MICHAEL STEVENSON

**Direct Appeal from the Chancery Court for Obion County**
**No. 24,758     W. Michael Maloan, Chancellor**

**No. W2009-00096-COA-R3-CV - Filed March 10, 2010**

JUDGE J. STEVEN STAFFORD, CONCURRING SEPARATELY:

I concur in the result reached by Judge Farmer.  However, because I reach the result by different reasoning, I write separately.

In addressing Mr. Sharp's contention that the trial court erred in not applying the superior parental rights doctrine, I find it necessary to discuss the standard applied to parent versus non-parent custody[1] disputes and the history behind that standard.  "It is well-settled that the Tennessee Constitution protects a natural parent's fundamental right to have the care and custody of his or her children."  ***In Re: R.D.H.***, 2007 WL 2403352 at *6 (citing ***Blair v. Badenhope,*** 77 S.W.3d 137 (Tenn. 2002)(citing ***Nale v. Robertson***, 871 S.W.2d 674, 680 (Tenn. 1994); ***Hawk v. Hawk***, 855 S.W.2d 573, 579 (Tenn. 1993)).  "[P]arental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child."  ***Blair***, 77 S.W. 3d at 141 (citing ***O'Daniel v. Messier***, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995)).

In an initial custody determination, where the court is asked to resolve a custody dispute between a parent and a non-parent, "a parent cannot be deprived of custody of a child unless there has been a finding, after notice required by due process, of a substantial harm to the child."  ***Blair***, 77 S.W.3d at 142 (citing ***In re Adoption of Female Child***, 896 S.W.2d 546, 548 (Tenn. 1995)). In that situation, the non-parent must prove by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the parent.  ***In re R.D.H.***, 2007 WL 2403352 at *6 (citing ***Ray v. Ray***, 83 S.W.3d 726, 731

---

[1]I recognize that the legislature abrogated the use of the term "custody order," and adopted the nomenclature of "permanent parenting plans" and its associated terminology.  *See* Tenn. Code Ann. § 36-6-404 (2005).  For simplification and clarification, I will use the term custody throughout this opinion in reference to parenting plans and primary residential parent status.

(Tenn. Ct. App. 2001)); see also ***Stubblefield v. State ex rel. Fjelstad,*** 106 S.W.2d 558, 560 (Tenn. 1937). Only after this burden is met may the court engage in a best interest of the child analysis. ***In Re Adoption of Female Child***, 896 S.W.2d at 548. Further, the Tennessee Supreme Court has held that, in the absence of a finding of substantial harm, "the deprivation of the custody of [a] child [would] result in an abridgment of [Father's] fundamental right to privacy." ***In re Askew***, 993 S.W.2d 1, 5 (Tenn. 1999). Our Supreme Court went on to state that in the absence of a valid initial order it would be unconstitutional for the parent "to bear the burden of proving the absence of substantial harm" to regain custody from a non-parent. ***Id***.

The Tennessee Supreme Court in ***Blair v. Badenhope***, addressed the situation where a parent sought to modify a valid order awarding custody to a non-parent. ***Blair***, 77 S.W.3d at 141. In ***Blair,*** the Supreme Court held that only in certain circumstances may a parent assert his or her superior parental rights to modify a valid court order transferring custody to a non-parent. ***Id***. at 143. The Supreme Court recognized four situations where a parent may assert his or her superior parental rights:

> (1) When no order exists that transfers custody from the natural parent;
> (2) When the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent;
> (3) When the order transferring custody from the natural parent is invalid on its face; and
> (4) When the natural parent cedes only temporary and informal custody to the non-parents.

***In re. A.M.H.***, 215 S.W.3d 793, 811 (Tenn. 2007)(citing ***Blair***, 77 S.W.3d at 143.)) If one of these situations does not apply, the parent may not assert his or her superior parental rights and may only regain custody upon a showing "that a material change in circumstances has occurred which makes a change in custody in the child's best interests." ***Blair,*** 77 S.W. 3d at 148 (citations omitted). This is the same standard as in the case of parent versus parent, where one parent seeks to modify custody. ***Id***. The burden of proof in this situation is on the party seeking to change custody. ***Id***. (citations omitted). This standard applies even when that order resulted from the parent's voluntary relinquishment of custody to the non-parent. ***Id***. at 143.

My two colleagues assert that the ***Blair*** court held that "the parent petitioning to modify the custody order bears the burden of demonstrating that application of the superior parental rights doctrine is justified." *Citing* **Blair,** 77 S.W.3d at 149 (quoting, with approval, ***Darlene S. v. Justino L.***, 141 Misc.2d 303, 533 N.Y.S.2d 179, 182 (N.Y. Fam. Ct. 1988); *see also* ***Dep't of Children's Servs. v. Dalton***, No. E2007-001216-COA-R3-JV, 2008 WL

2811305, at *6 (Tenn. Ct. App. July 22, 2008). Respectfully, I must disagree with this assertion. The **Blair** court held that the parent bore the burden of proving one of the four exceptions discussed above in order to invoke the superior parental rights doctrine in a modification proceeding. **Blair,** 77 S.W.3d at 148. Unless one of the four exceptions, mentioned above, applied, the parent bore the burden of proof in a modification proceeding against a non-parent; i.e. the burden of showing a material change in circumstances and the best interests of the child. **Id.** at 148. The **Blair** court did not address the burden of proof for voluntary relinquishment with knowledge of the consequences of that decision. **Id.** at n.3. The court did explicitly state that consent, *without* knowledge of the effect of that decision, would justify the application of the superior parental rights doctrine, and therefore a waiver would not be affected. **Id.** The dissent further relies on **In re A.M.H.,** 215 S.W.3d 793, 812 (Tenn. 2007), to support this contention. However, **In re A.M.H.**, the Tennessee Supreme Court found that the parents had been misled and that the transfer of custody was entered into as a temporary arrangement. **Id.** Because the parents thought the custody arrangement was temporary, a situation where superior parental rights would clearly apply according to **Blair**, the parents did not have knowledge of the consequences. **Id.** The **A.M.H.** Court did not address who, the parent or the non-parent, bore the burden of showing the applicability of the superior parental rights doctrine or that the parent entered into the arrangement without knowledge of the consequences.

Mr. Sharp submits that the fourth **Blair** exception applies in this case; specifically, he asserts that the parenting plan entered into by the parties was temporary. After reviewing the record, I disagree. The terms "temporary and informal" refer to the finality of the order. **In re R.D.H.,** 2007 WL 2403352 at *9. "An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do." **State, ex rel., McAllister v. Goode**, 968 S.W. 2d 834, 840 (Tenn. Ct. App. 1997)(citing **Vineyard v. Vineyard**, 170 S.W.2d 917, 920 (Tenn. 1942)). "Trial courts have discretion to grant temporary custody arrangements in circumstances 'where the trial court does not have sufficient information to make a permanent custody decision or where the health, safety, or welfare of the child or children are imperiled.'" **In re R.D.H.**, 2007 WL 2403352 at *9 – 10 (quoting **Warren v. Warren,** W1999-02108-COA-R3-CV, 2001 WL 277965 at *4 (Tenn. Ct. App. 2001)(quoting **King v. King,** No. 01A01-91-10PB00370, 1992 WL 301303, at *2 (Tenn. Ct. App. 19992)). Nothing in the record indicates that this parenting plan was a temporary or informal order. As noted by the trial court, two previous orders between these parties were specifically designated as temporary, but this one was not. In fact, this parenting plan is titled "Permanent Parenting Plan." Additionally, nothing in the consent order or parenting plan indicates that it is temporary, or places a condition on the plan, or signifies that it will later be reconsidered by the court. Accordingly, I would affirm the trial court's finding that the parenting plan was not temporary.

However, finding that the parenting plan is not temporary is not dispositive because the **Blair** court stated that the "parent's voluntary relinquishment of custody must be made *with knowledge of the consequences* of that decision." **Blair**, 77 S.W.3d at n.3(emphasis added). A parent may knowingly cede custody without understanding that by doing so he is forever waiving his superior rights. In response to the dissent's concern that a voluntary waiver could be a "trap for the unwary," because a parent "may make custodial decisions without fully understanding the legal ramifications of their choices," the **Blair** court stated, "[w]here a natural parent voluntarily relinquished custody, *without knowledge of the effect of that act*, then it cannot be said that these rights were accorded the protection demanded by the Constitution. As such, application of the superior parental rights doctrine would be justified." **Id**.*(emphasis added)* Accordingly, "if the parent did not understand the *legal ramifications* of the action, the superior parental rights doctrine may still apply in a modification proceeding." **In re R.D.H.**, 2007 WL 2403352 at *7 (citing **Blair**, 77. S.W.3d at n.3)(emphasis added). In **Blair**, however, as specifically noted by the court, the parent did not assert that he did not have knowledge of the consequences; therefore, the issue was not addressed. **Blair**, 77 S.W.3d at n.3. The mother in **R.D.H.** did assert that she did not have knowledge of the consequences. **In re R.D.H.**, 2007 WL 2403352 at *8. However, the **R.D.H.** court was not required to address this issue because it found that the order mother sought to modify was a temporary order and, as such, fell within the fourth **Blair** exception. **Id**. at 11.

The interpretation of the phrase, "with knowledge of the consequences of that transfer" is the determinative issue in this case. It appears that this issue has not previously been interpreted by the courts of this State. Nonetheless, the issue requires us to consider not only "the degree of knowledge sufficient to give effect to voluntary waiver," but also "the specific knowledge required, who must provide that knowledge, the burden of proof regarding knowledge and waiver, and when the issue is properly raised." Campbell, Betty*, Constitutional Law - - Blair v. Badenhope: Parent v. Parent or Parent v. Non-Parent- - the Tennessee Supreme Court's New "One Size Fits all" Standard for Modification of Valid Custody Orders*, 34 U. Mem. L. Rev 199, 230–31 (2003).

Superior parental rights "continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." **Blair**, 77 S.W. 3d at 141 (citations omitted). In a contested hearing, in order to grant custody initially to a non-parent, a trial court must find substantial harm or misconduct by clear and convincing evidence. **Ray v. Ray**, 83 S.W.3d 726, 733 (citing **Stubblefield**, 106 S.W.2d at 560)(requiring a "clear preponderance of convincing proof"); see also **In re Adoption of Female** Child, 896 S.W.2d at 548 (requiring a clear showing); **Hall v. Bookout**, 87 S.W.3d 80, 86 (Tenn. Ct. App.

2002); *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982 at \*3 (Tenn. Ct. App. 2008); and *In Re R.D.H.*, 2007 WL 2403352 at \*6. "The state and federal constitutions require a heightened standard because of the possible effects on a biological parent's parenting rights." *Ray*, 83 S.W.3d at 733 (citing *O'Daniel v. Messier,* 905 S.W.2d at 187).

It would be illogical for this Court to require clear and convincing proof of substantial harm or other misconduct in a contested case, but delineate a different standard of proof for showing consent to voluntarily transfer custody. Accordingly, I would hold, as a matter of law, that a parent's consent to relinquish his or her superior parental rights must be shown by clear and convincing evidence. Furthermore, because our Supreme Court has stated that the parent waiving his or her superior parental rights must do so with knowledge of the consequences, *Blair* 77 S.W.3d at 148, I would hold that the knowledge of the consequences of the transfer, must also be shown by clear and convincing evidence. Specifically, there must be clear and convincing evidence that the parent understood the legal consequences of entering into the agreement in order for the agreement to operate as a waiver of the fundamental constitutional right to parent one's children.

> The waiver of a constitutional right is voluntary and intelligent
> if the record expressly reflects that the defendant had a basic
> understanding of the nature of the right which was relinquished
> or abandoned, and expressly reflects acknowledgment that the
> defendant made or agreed to the relinquishment or abandonment
> of that right.

16 C.J.S. Constitutional Law § 141 (2009). While no formal or written waiver is required, statements and supporting evidence must clearly and convincingly show that the parent voluntarily relinquished his or her superior parental rights, with knowledge of the consequences. Our Supreme Court has held that deprivation of custody without a finding of substantial harm or requiring the parent "to bear the burden of proving absence of substantial harm," would be unconstitutional. *In re Askew*, 993 A.W.2d at 5. Similarly, deprivation of custody absent a finding of consent with knowledge of the consequences, or requiring the parent to prove the absence of consent with knowledge of the consequences, would unconstitutionally infringe on a parent's fundamental right to parent his or her child. *See In re Askew*, 993 S.W.2d 1, 5 (Tenn. 1999).

This holding would be consistent with the Supreme Court of Kentucky in its opinion in *Greathouse v. Shreve*, 891 S.W.2d 387 (K.Y. 1995). In that case, the maternal grandmother brought an action to adopt the child and terminate father's rights. *Id.* at 388. The complaint was later amended and grandmother was only seeking custody. *Id.* Grandmother and mother were awarded custody and father was awarded visitation rights.

*Id.* The Kentucky Court of Appeals affirmed the trial court, but instead used a waiver principle. *Id.* at 389. The Court of Appeals found that because Father had surrendered custody to grandmother, he waived his superior parental rights and therefore a best interest analysis applied. *Id.* The Kentucky Supreme Court reversed this decision based on the waiver issue. *Id.* at 390. The Kentucky Supreme Court found that the trial court erred by applying a best interests analysis, as Kentucky recognizes the parent's superior rights. *Id.* The Kentucky Supreme Court held that a parent may waive his superior parental rights. *Id.* On remand, the Kentucky Supreme Court directed that the trial court must find by clear and convincing evidence that the father waived his superior parental right before it may use a best interests analysis in deciding custody between father and grandmother. *Id.*

The Kentucky court defined waiver as a "voluntary and intentional surrender or relinquishment of a *known right*, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Id.* (quoting *Barker v. Stearns Coal & Lumber Co.*, 163 S.W.2d 466, 470 (1942))(emphasis added). In addressing the issue of evidence required for waiver, the KY court stated:

> "waiver requires proof of a 'knowing and voluntary surrender or relinquishment of a known right.' Because this is a right with both constitutional and statutory underpinnings, proof of waiver must be clear and convincing. As such, while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof.

*Id.* at 391. While Tennessee would not apply a waiver in this situation, as there was no previous consent order entered giving grandmother custody initially, the analysis on waiver would not differ.

The standard adopted in *Greathouse* is still applicable and was used as recently as January 2010 by the Supreme Court of Kentucky in *Mullins v. Picklesimer*, No. 2008-SC-000484-DGE, 2010 WL 246063, (K.Y. January 21, 2010):

> [T]he non-parent pursuing custody must prove either of the following two exceptions to a parent's superior right or entitlement to custody: (1)that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence.

-6-

***Mullins,*** 2010 WL 246063, at * 7(citing *Moore v. Asente,* 110 S.W.3d 336, 359 (K.Y. 2003).[2] Similarly to the standard required by the Supreme Court of Kentucky, I would require that it be shown by clear and convincing evidence that a parent consented, with knowledge of the consequences, thus waiving his or her superior parental rights, before that parent could be barred from asserting his or her superior rights.

The Tennessee Supreme Court has defined "clear and convincing" evidence as more exacting than the preponderance of the evidence standard but not requiring such certainty as beyond a reasonable doubt. ***Hughes v. Bd. of Prof'l. Responsibility. Of Sup. Ct. of Tenn***., 259 S.W.3d 631, 641 (Tenn. 2008)(quoting ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). "Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." ***O' Daniel v. Messier***, 905 S.W.2d at 188 (citations omitted).

The ***Blair*** court expressed concern over the ability of a parent to create a situation requiring the custodial non-parent to show cause as to why the parent should not be granted custody. ***Blair***, 77 S.W.3d at 149. The court feared that such ability would render existing orders of custody to non-parents worthless. ***Id.*** Appellee submits that allowing Mr. Sharp to assert his superior rights would create such a situation. I disagree. This holding merely clarifies the standard set forth in ***Blair*** and the existing case law. In accordance with ***Blair,*** in a modification proceeding, where a parent seeks to change custody from a non-parent, the parent may not assert his or her superior parental rights if he or she has previously relinquished those rights with knowledge of the consequences of the transfer by entering into the original order. However, in a case where there is not clear and convincing evidence that the parent entered into the initial order with knowledge of the legal consequences of the transfer, such order or agreement to relinquish custody will not serve as a waiver. Rather, in that case, the parent would be able to assert his or her superior parental rights.

Utilizing this reasoning, we are required to review the case before us to determine whether the facts, as found by the trial court, clearly and convincingly show that Mr. Sharp

---

[2]***Mullins*** is a case between the biological mother and the same-sex partner that she was in a relationship with at the time the mother was artificially inseminated. While presenting a slightly different factual situation, Kentucky applied the same standard as would apply between a parent and non-parent. I would note that Kentucky only applies this standard as between a parent and non-parent when the non-parent is not a "de facto custodian," as noted by the ***Mullins*** court. ***Mullins***, 2010 WL 246063 at *7. A "de facto custodian" is a creature of statute in Kentucky, Ky. Rev. Stat. Ann. §403.270, and because Tennessee does not differentiate between types of custodians or non-parents, the analysis would be the same. I also recognize that ***Mullins*** is not a final decision, however, the ***Greathouse*** standard has been applied consistently in cases subsequent to its release. *See e.g.* ***Vinson v. Sorrell***, 136 S.W.3d 465, 469 (K.Y. 2004); ***Moore v. Asente***, 110 S.W.3d 336 (K.Y. 2003); and ***Shifflet v. Shifflet,*** 891 S.W.2d 392 (K.Y. 1995).

entered into this agreement with knowledge of the consequences of the transfer. The trial court, based on the fact that Mr. Sharp had counsel and is presumed to have knowledge of the agreements he enters into, held that Mr. Sharp knowingly entered into the parenting plan. Mr. Sharp entered into the agreed permanent parenting plan in May 2007, which granted primary residential status to Grandparents. Superior parental rights are not mentioned anywhere in the parenting plan or consent order. The standard of proof necessary to change custody is also not mentioned in the parenting plan or consent order.

At trial, the only evidence introduced as to whether Mr. Sharp understood the legal consequences of entering into the agreed parenting plan was his own testimony. Mr. Sharp contended that he had not waived his superior rights because he did not understand that, by agreeing to the plan, he was permanently giving up these rights. Mr. Sharp repeatedly testified that he did not understand he was waiving his superior parental rights and that, had he known, he would not have entered into the agreement. Mr. Sharp testified that he had counsel when entering into the parenting plan and that he had discussed this issue with his counsel. He testified that he was assured by his attorney that he was not giving up his parental rights. He further testified that he was entering into the parenting plan in order to gain more parenting time with the children which had been severely limited by the Stevensons over the previous two years. This action is consistent with his assertion that he intended to retain his superior right to custody. No further evidence was introduced concerning Mr. Sharp's knowledge and understanding of the rights he was waiving by entering into the Consent Order and Permanent Parenting Plan.

We may presume that Mr. Sharp had knowledge of the terms of the agreement based on his execution of the agreement. *Giles v. Allstate Ins. Co., Inc.,* 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993). However, we may not presume that he had knowledge of the consequences of entering into the agreement. Specifically, we may not presume that he knew he was waiving his constitutionally protected superior parental rights by entering into the agreement, especially in light of the fact that nowhere in the agreement are these rights mentioned.

The dissent focuses on the history in the case in reaching the conclusion that Mr. Sharp knew the legal consequences of the agreement on custody. The dissent cites the fact that Mr. Sharp had entered into a previous custody arrangement with Ms. Sharp and was in fact named the "primary residential parent," the fact that the Stevensons had a temporary custody order, and the fact that he had been involved in "two years of legal wrangling" wherein he was represented by counsel. While I concede that these facts indicate Mr. Sharp must have known he was giving up custody of his children to the Stevensons, it in no way indicates that he understood the legal consequences of that act; that is, forever waiving his constitutionally protected superior parental rights.

-8-

"Where a natural parent voluntarily relinquishes custody without knowledge of the effect of that act, then it cannot be said that these rights were accorded the protection demanded by the Constitution." ***Blair***, 77 S.W.3d at n3. Based on my finding, it would be unconstitutional to deny Mr. Sharp his fundamental right to parent his child without a finding of substantial harm.

I find that the parenting plan was not a temporary arrangement. The right to parent ones child is a constitutionally protected right. A parent only loses this right upon a showing of substantial harm or by voluntarily transferring custody, *with knowledge of the consequences,* i.e. the legal ramifications. Because this is a constitutionally protected right, consent, with knowledge of the consequences, must be shown by clear and convincing evidence, the same standard of proof required for a finding of substantial harm. Further, if the parent asserts his or her superior rights and the non-parent asserts a waiver of these rights, the burden of proving the waiver rests with the non-parent. This burden must be met by clear and convincing evidence.

Father's consent with knowledge of the consequences has not been shown by clear and convincing evidence. Thus Father has not waived his superior parental rights. Consequently, I concur with Judge Farmer in his decision to vacate the order of the trial court and I would remand for further proceedings in accordance with this opinion.

_____
J. STEVEN STAFFORD, J.